E-FILED; Cecil Circuit Court
Docket: 11/1/2024 5:09 PM; Submission: 11/1/2024 5:09 PM
Envelope: 18661920

## IN THE CIRCUIT COURT OF MARYLAND
## FOR CECIL COUNTY

DANIELLE GURNEY
14 MOUNT ST.,
RISING SUN, MD 21911

REBECCA LASHBROOK
4382 ELIZABETH LAKE RD., APT. 2,
WATERFORD, MI 48328

HUSNAH KHAN
1560 MOUNT HOPE AVE.,
ROCHESTER, NY 14620

NATALIE MERRITT
627 STARCLIFF CIRCLE,
LANCASTER, SC 29720

DARIUS DAVIS
15806 YOUPON VALLEY DRIVE,
HOUSTON, TX 77073

SHANIKA JONES
4105 3RD ROAD N. APT. 4,
ARLINGTON, VA 22203

BRITTANY BASHAM
1628 N 2530 W
CLINTON, UT 84015

     on their own behalf and on behalf of
     all others similarly situated,

     *Plaintiffs*,

     v.

HOT TOPIC, INC.
3410 POMONA BLVD.
POMONA, CA 91768

Serve on:  CSC-LAWYERS INCORPORATING
          SERVICE COMPANY
          7 ST. PAUL STREET, SUITE 820
          BALTIMORE MD 21202

     *Defendant*.

**JURY TRIAL DEMANDED**

CASE NO.: C-07-CV-24-000553

1

EXHIBIT
**A**

## CLASS ACTION COMPLAINT

### I.    PRELIMINARY STATEMENT

1.    Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    As the Federal Trade Commission advises in its Guides Against Deceptive Pricing, it is deceptive to make up "an artificial, inflated price . . . for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1.

4.    In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price . . . for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

5.    In addition, the consumer protection and false advertising statutes of Maryland, Michigan, New York, South Carolina, Texas, Utah, California, and Virginia each contain prohibitions on unfair and deceptive trade practices, including, in many instances, prohibitions on businesses making false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, among other specific prohibitions related to consumer transactions.

6.    Many of these various state statutes, as described and alleged more fully below, also prohibit sellers from using misleading price comparisons to advertise their products.

7.    So, as numerous courts have found, fake sales violate these laws. They also violate Maryland, Michigan, New York, South Carolina, Texas, Utah, Virginia, and California's general prohibition on unlawful, unfair, and deceptive business practices. *See infra,* Counts I through XI.

8.    Defendant Hot Topic, Inc. ("Hot Topic" or "Defendant") makes, sells, and markets clothing and accessories (the "Hot Topic Products" or "Products"). The Products are sold online through Defendant's website, HotTopic.com.

9.    On its website, Defendant lists prices and advertises purported time-limited discounts from those listed prices. These include "LIMITED TIME ONLY" sitewide discounts offering "up to [X]% off sitewide" or "[X]% off sitewide." These discounts are made available by using a discount code or are automatically applied to the Products sitewide. Defendant also advertises that its Products have a lower discount price as compared to a higher, normal/regular list price shown in grey and/or strikethrough font.

10.    Far from being time-limited, however, Defendant's discounts are *always* available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices (the prices it usually charges), because Defendant's Products are *always* available for less than the listed "regular" prices. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all, because customers can always buy Defendant's Products at the discount price. Nor are the purported discounts "LIMITED TIME ONLY"—quite the opposite, these "discounts" are always available.

11.    As described in greater detail below, Plaintiffs bought Products from Defendant from its website, HotTopic.com. When Plaintiffs made their purchases, Defendant advertised that a

3

limited-time sale was going on, and so Defendant represented that the Products Plaintiffs purchased were being offered at a steep discount from their purported regular prices. And based on Defendant's representations, Plaintiffs believed that they were purchasing Products whose regular price and market value were the purported list price that Defendant advertised, that they were receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable (but demonstrably incorrect) beliefs were what caused Plaintiffs to buy from Defendant.

12.     The representations Plaintiffs relied on, however, were not true. The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited. Had Defendant been truthful, Plaintiffs and other consumers like them would not have purchased the Products, or would have paid less for them.

13.     Plaintiffs bring this case for themselves and the other customers who purchased Defendant's Products.

II.     **PARTIES**

14.     Plaintiff Danielle Gurney is domiciled in Cecil County and resides at 14 Mount St., Rising Sun, MD 21911.

15.     Plaintiff Rebecca Lashbrook is domiciled in Michigan, and resides at 4382 Elizabeth Lake Rd., Apt. 2, Waterford, MI 48328.

16.     Plaintiff Husnah Khan is domiciled in New York, and resides at 1560 Mount Hope Ave., Rochester, NY 14620.

17.     Plaintiff Natalie Merritt is domiciled in South Carolina, and resides at 627 Starcliff Circle, Lancaster, SC 29720.

18.    Plaintiff Darius Davis is domiciled in Texas, and resides at 15806 Youpon Valley Drive, Houston, TX 77073.

19.    Plaintiff Brittany Basham is domiciled in Utah, and resides at 1628 N 2530 W, Clinton, UT 84015.

20.    Plaintiff Shanika Jones is domiciled in Virginia, and resides at 4105 3rd Road N. Apt. 4, Arlington, VA 22203.

21.    The proposed Nationwide Class includes citizens of every state.

22.    Defendant Hot Topic, Inc. is a California corporation with its principal place of business at 18305 E. San Jose Ave, City of Industry, California 91748.

III.    **JURISDICTION AND VENUE**

23.    This Court has jurisdiction over this case under MD. CODE ANN., CTS. & JUD. PROC. § 1-501.

24.    This Court has personal jurisdiction over Defendant Hot Topic pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-103(1)-(3), as Hot Topic systematically and continually transacts business in Maryland, maintains leases in the state of Maryland, operates stores located in the state of Maryland, the case arises, in part, out of a transaction that took place within Maryland, and Hot Topic contracts to supply goods or services in Maryland.

IV.    **FACTUAL ALLEGATIONS**

A.    **Defendant's fake prices and fake discounts**:

25.    Defendant makes, sells, and markets clothing and accessories. Hot Topic sells its Products directly to consumers online, through its website, HotTopic.com.

26.    On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

27.     At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts always purportedly offer 20% or more off the regular prices Defendant advertises. Even though, in truth, these discounts run in perpetuity, Defendant prominently claims that they are "LIMITED TIME." And it advertises these discounts extensively: on an attention-grabbing banner near the top of its website; in a large banner image on its homepage; on the products listing pages; on the individual product pages for each Product, and on the checkout pages. It advertises them by touting "[X]% off"; by advertising list prices in strikethrough font next to lower, purported discount prices; with slogans such as "20% Off" in attention-grabbing, red font next to product descriptions; and by identifying the supposed savings that customers are supposedly receiving by expressing the savings as a negative number off the supposed full purchase price, in red font, during checkout.

28.     Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, Defendant represents that its sales expire on a particular date ("Today Only") or when the countdown clock expires, for example: "12 Hours: 52 Mins: 11 Secs." To reasonable consumers, this means that after the countdown clock runs out, Defendant's Products will no longer be on sale and will retail at their purported list prices. But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

29.     Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts. For example, the Products listed on Defendant's website do not normally sell at the "list" price that is stricken through. Rather, the Products almost always sell at below the "list" price, and therefore, the representation that a particular Product has a "list" price of $X is false and misleading. The "list" price is not an accurate reflection of the actual regular or normal price of any given Product, including the Products referenced within this Complaint.

6

30.    Occasionally, to obtain the advertised discount, consumers must enter the promo code. The promo code is located in a prominently displayed banner at the top of the shopping cart. It is located on a banner on every page of Defendant's website, including on product pages, search pages, and the checkout pages. And, as described above, the sale is extensively advertised throughout Defendant's websites. So, the overwhelming majority (if not all) of Defendant's sales are made using the promo code, at the advertised discount price (and not the supposedly regular list price).

31.    Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the "limited-time" promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y; and they will get a discount. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later. However, Named Plaintiffs and members of the Classes do not ever actually receive the promised discount, because the price of a given Product that is subject to the promised discount is actually the normal price. For instance, where a Product has a "list" price of $23.90, and is discounted by 20% so that it sells for $19.12, the *actual* normal or regular price of the item is $19.12, *not* $23.90. Thus, if a consumer pays $19.12 for that Product, they have actually paid the normal or regular price for the product, since that Product is always available at a discount of 20%, and they have not actually received 20% off of their purchase, as promised.

32.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices are Defendant's regular prices (that is, the prices at which the Products ordinarily or typically retail for), and its former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect). In other words, reasonable consumers

7

believe that the list prices Defendant advertises represent the amount that consumers usually have to

pay for Defendant's goods, formerly had to pay for Defendant's goods, before the limited-time sale

began, and will again have to pay for Defendant's goods when the sale ends. Said differently,

reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers

had to pay the list price to get the item and did not have the opportunity to get a discount from that

list price.

33.    Reasonable consumers also reasonably believe that the list prices that Defendant

advertises represent Defendant's regular prices, and the true market value of the Products, and that

they are the prevailing prices for those Products. Reasonable consumers also believe that they are

receiving reductions from Defendant's regular prices, former prices, and the market value of the

Products in the amounts advertised. Said differently, reasonable consumers reasonably interpret

Defendant's advertisements to mean that, if they buy now, they will receive a price reduction from the

price at which Defendant ordinarily and typically sells its Products; a price reduction from

Defendant's former prices; and a price reduction from the Product's market value. In truth,

however, Defendant always offers purported reductions off the list prices it advertises. As a result,

everything about Defendant's price and purported discount advertising is false. The list prices

Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices

for the Products Defendant sells, and do not represent the true market value for the Products,

because Defendant's Products are always available for less than that, and customers did not have to

formerly pay that amount to get those items. The purported discounts Defendant advertises are not

the true discount the customer is receiving. Nor are the purported discounts "LIMITED TIME

ONLY"—quite the opposite, since they are always available.

B.    **Defendant's advertisements are unfair, deceptive, and unlawful.**

34.     The Maryland Consumer Protection Act ("MDCPA"), Md. Code Ann., Com. Law §

13-301, *et seq.* prohibits unfair, abusive, or deceptive trade practices, including: "False, falsely

disparaging, or misleading oral or written statement, visual description, or other representation of

any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" (Md.

Code Ann., Com. Law § 13-301(1)); Representations that "[c]onsumer goods, consumer realty, or

consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit,

or quantity which they do not have;" (Md. Code Ann., Com. Law § 13-301(2)(i)); "[f]ailure to

state a material fact if the failure deceives or tends to deceive;" (Md. Code Ann., Com. Law § 13-

301(3)); advertisement of consumer goods "[w]ithout intent to sell, lease, or rent them as

advertised or offered;" (Md. Code Ann., Com. Law § 13-301(5)(i)); "[f]alse or misleading

representation of fact which concerns . . . [t]he reason for or the existence or amount of a price

reduction; or [a] price in comparison to a price of a competitor or to one's own price at a past or

future time;" (Md. Code Ann., Com. Law § 13-301(i) and (ii)); "[f]alse statement which concerns

the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale

or discount prices;" (Md. Code Ann., Com. Law § 13-301(8)); and "[d]eception, fraud, false

pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of

any material fact with the intent that a consumer rely on the same in connection with . . . [t]he

promotion or sale of any consumer goods, consumer realty, or consumer service[.]" (Md. Code

Ann., Com. Law § 13-301(9)).

35.     The Michigan Consumer Protection Act ("MICPA"), Mich. Comp. Laws Ann. §

445.901, *et seq.* prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the

conduct of trade or commerce[.]" Mich. Comp. Laws Serv. § 445.903, including: "[r]epresenting that

goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities

that they do not have[,]" Mich. Comp. Laws Serv. § 445.903(c); "[r]epresenting that goods or

services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[,]" Mich. Comp. Laws Serv. § 445.903(e); "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented[,]" Mich. Comp. Laws Serv. § 445.903(f); "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions[,]" Mich. Comp. Laws Serv. § 445.903(i); "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer[,]" Mich. Comp. Laws Serv. § 445.903(s); and "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. Laws Serv. § 445.903(bb).

36.    The New York Consumer Protection ACT ("NYCPA"), N.Y. Gen. Bus. Law § 349, *et seq.* declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in this state," (N.Y. Gen. Bus. Law § 349), and "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

37.    The South Carolina Unfair Trade Practices Act ("SCUTPA"). S.C. Code Ann. § 39-5-10, *et seq.* declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. S.C. Code Ann. § 39-5-20.

38.    The Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.* prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," including "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (Tex. Bus. & Com. Code § 17.46(5)); "representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another;" (Tex. Bus. & Com. Code § 17.46(7)); "advertising goods or services with intent not to sell them as advertised;" (Tex. Bus. & Com. Code § 17.46(9)); and "making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;" (Tex. Bus. & Com. Code § 17.46(11)).

39.    A person violates the Utah Truth in Advertising Act ("UTIAA"), Utah Code Ann. § 13-11a-1, *et seq*. when that person "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have[,]" Utah Code Ann. § 13-11a-3(e); "represents that goods or services are of a particular standard, quality, or grade, or that goods are a particular style or model, if they are of another[,]" Utah Code Ann. § 13-11a-3(g); "advertises goods or services or the price of goods and services with intent not to sell them as advertised[,]" Utah Code Ann. § 13-11a-3(i); "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, including the false use of . . . the . . . expression[] . . . "final days[,]" Utah Code Ann. § 13-11a-3(k); "represents, in an advertisement of a reduction from the supplier's own prices, that the reduction is from a regular price, when the former price is not a regular price as defined in Subsection 13-11a-2(14)[,]" Utah Code Ann. § 13-11a-3(p); or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Utah Code Ann. § 13-11a-3(t).

40.    The Virginia Consumer Protection Act of 1977 ("VCPA"), Va. Code Ann. § 59.1-196, *et seq*. declares the following fraudulent acts or practices committed by a supplier in connection with a consumer transaction to be unlawful: "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits[,]" Va. Code Ann. § 59.1-200(5); "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model[,]" Va. Code Ann. § 59.1-200(6); "Advertising goods or services with intent not to sell them as

advertised, or with intent not to sell at the price or upon the terms advertised[,]" Va. Code Ann. §

59.1-200(8); "Making false or misleading statements of fact concerning the reasons for, existence of,

or amounts of price reductions[,]" Va. Code Ann. § 59.1-200(9); and "Using any other deception,

fraud, false pretense, false promise, or misrepresentation in connection with a consumer

transaction[.]" Va. Code Ann. § 59.1-200(14).

      41.     California's False Advertising Law prohibits businesses from making statements they

know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes

statements falsely suggesting that a product is on sale, when it actually is not. Moreover, California's False

Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the

alleged former price was the prevailing market price . . . within three months next immediately preceding"

the advertising. Cal. Bus. & Prof. Code § 17501.

      42.     California's Unfair Competition Law bans unlawful, unfair, and deceptive business

practices. *See* Cal. Bus. & Prof. Code § 17200.

      43.     The Federal Trade Commission's regulations prohibit false or misleading "former price

comparisons," for example, making up "an artificial, inflated price . . . for the purpose of enabling the

subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or

misleading "retail price comparisons" and "comparable value comparisons," for example, ones that

falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the

same merchandise" when this is not the case. 16 C.F.R. § 233.1.

      44.     Here, as described in detail above, Defendant makes false and misleading

representations of fact about its prices. Defendant makes false or misleading representations of fact

concerning the existence of and amounts of price reductions, including the existence of steep discounts,

and the amounts of price reductions resulting from those discounts. Defendant also advertises regular

prices that are not its true regular prices, or its former prices.

45.     Defendant also represents that the goods have characteristics that they do not have—namely, that the values of the Products are greater than they actually are.  Defendant does this by advertising fake discounts for the Products, as alleged in greater detail above.  Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Finally, Defendant makes false or misleading statements about its promotions.  As detailed above, for example, Defendant makes "limited time" offers that are not, in fact, time-limited.

46.     The Maryland, Michigan, New York, South Carolina, Texas, Utah, California, and Virginia statutes listed in Paragraphs 34-42 also prohibit, in some form, sellers from using misleading price comparisons to advertise their products.  As alleged in greater detail above and below, Defendant uses misleading price comparisons.

47.     For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.  Defendant uses strikethrough sale pricing without any disclosures about where the strikethrough price comes from.

48.     In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price).  Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

C.    **Defendant's advertisements harm consumers**.

49.     Based on Defendant's advertisements, reasonable consumers expect that Defendant's regular prices (the prices without the advertised discounts) are former prices at which Defendant actually

sold its Products before the discounts were introduced for a limited time; that they are the prevailing prices for the Products; and that they represent the true market value of the Products.

50.     Reasonable consumers also expect that, if they purchase during the sale, they will receive (at a discount) Products whose market value is the regular, non-discounted price. For example, for items that are purportedly 20% off, reasonable consumers would expect that they are receiving a 20% discount as compared to the regular price and former price, and that the items have a market value of 20% more than what they are spending.

51.     As explained above, however, Plaintiffs' and class members' reasonable expectations were not met. Instead of receiving Products with a market value equal to the alleged regular prices, they received items worth less. In addition, instead of receiving a significant discount, Plaintiffs and the class received little or no discount. Thus, Defendant's false advertisements harm consumers by depriving them of the reasonable expectations to which they are entitled.

52.     In addition, consumers are more likely to buy a product, and buy more of it, if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

53.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two- thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited on October 17, 2024).

with a brand that is new to them if they found an offer or discount."[2] Similarly, when consumers

believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

54.    Thus, Defendant's advertisements harm consumers by inducing them to make

purchases they otherwise would not have made, based on false information. In addition, Defendant's

advertisements artificially increase consumer demand for Defendant's Products. This puts upward

pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a

price premium for its Products, that it would not be able to charge absent the misrepresentations

described above. So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the

Products they bought than they otherwise would have.

**D.    Plaintiffs were misled by Defendant's misrepresentations.**

55.    Plaintiffs were misled by Defendant Hot Topic, Inc.'s representations.

56.    Defendant's website prominently advertises sales. In particular, as described in

further detail above, Defendant advertises purportedly time-limited "sitewide" sales where everything is

purportedly 20% or more off for a limited time.[4] Defendant also advertises purported regular prices and

associated discounts for its Products. And Defendant advertises that the discounts are available "for a

LIMITED TIME ONLY." Defendant's representations are made prominently at the top of each of the

pages on its website, on its Product descriptions, and on its checkout pages.

---

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html) (last visited on October 17, 2024).

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.5%-10%) (last visited on October 17, 2024); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (https://uplandsoftware.com/adestra/resources/success-story/dynamic-email-content-leads-to-400-increase-in-conversions-for-black-friday-email/) (last visited on October 17, 2024) (400% higher conversation rate for ad with countdown timer).

[4] Subject to certain exclusions not relevant here.

57.    Defendant's fake sales scheme has been a way of business for Hot Topic for many years. These fake sales persisted when Plaintiffs made their purchases.

58.    By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. These discounts make consumers substantially more likely to make the purchase, and induces them to make purchases they otherwise would not have made.

59.    What is false or misleading about Defendant's representations is that, based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the prevailing prices at which Defendant actually sells its Products, former prices at which Defendant sold the Products, and the market value of the Products in question. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

### *Plaintiff Gurney's Experience*

60.    On November 10, 2021, Ms. Gurney purchased a "My Hero Academia Izuku Midoriya Hoodie," from Defendant's website, HotTopic.com. She made this purchase while living in Rising Sun, Maryland. On its website and during checkout, Defendant represented that Plaintiff Gurney would receive a time-limited discount of 30% off her purchase.

61.    Defendant also represented that the regular list price of My Hero Academia Izuku Midoriya Hoodie was $49.90. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Ms. Gurney's online Order Details (receipt showing a "Discount" of $14.97).

16

62.    Ms. Gurney read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that she would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Ms. Gurney reasonably understood that the Product she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that this published list price was the market value of the Product that she was buying, that she was receiving the advertised discount and a price reduction as compared to the regular price, and that the advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Product listed on Defendant's website did not normally sell at the published "list" price. Rather, the Product was almost always available for sale at below the published "list" price, and therefore, the representation that the Product had a "list" price of the amount listed on Defendant's website was false and misleading. The "list" price was not, in fact, an accurate reflection of the actual regular or normal price of the Product purchased by Plaintiff. She would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discount.

*Plaintiff Davis' Experience*

63.    On March 25, 2024, Plaintiff Davis purchased a "Scream Ghost Face Jumbo Chillin' T-Shirt," from Defendant's website, HotTopic.com. He made this purchase while living in Houston, Texas. On its website and during checkout, Defendant represented that Plaintiff Davis would receive a time-limited discount of 20% off his purchase.

64.    Defendant also represented that the regular list price of Scream Ghost Face Jumbo Chillin' T-Shirt was $26.90. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Mr. Davis's online Order Details (receipt showing a "Discount" of $5.38).

17

65.    Mr. Davis read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that he would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Mr. Davis reasonably understood that the Product he was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that this published list price was the market value of the Product that he was buying, that he was receiving the advertised discount and a price reduction as compared to the regular price, and that the advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Product listed on Defendant's website did not normally sell at the published "list" price. Rather, the Product was almost always available for sale at below the published "list" price, and therefore, the representation that the Product had a "list" price of the amount listed on Defendant's website was false and misleading. The "list" price was not, in fact, an accurate reflection of the actual regular or normal price of the Product purchased by Plaintiff. He would not have made the purchase if he had known that the Product was not discounted as advertised, and that he was not receiving the advertised discount.

*Plaintiff Kahn's Experience*

66.    On April 5, 2024, Plaintiff Kahn purchased a "Scream Ghost Face Doll T-Shirt" from Defendant. They purchased the Products from Defendant's website, HotTopic.com, while living in Bloomfield Hills, Michigan. Plaintiff Kahn's invoice represented that they were receiving a substantial 40% discount off of the regular prices for the item that they ordered. The invoice represented that the regular price of all items purchased was $23.90 plus tax, and that Plaintiff Kahn was receiving a discount of 40% (or $9.56).

67.     Defendant represented that the regular list price of Scream Ghost Face Doll T-Shirt was $23.90. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Plaintiff Kahn's online Order Details (receipt showing a discount of $9.56).

68.     Plaintiff Kahn read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that they would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Plaintiff Kahn reasonably understood that the Product they were purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that this published list price was the market value of the Product that they were buying, that they were receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Product listed on Defendant's website did not normally sell at the published "list" price. Rather, the Product was almost always available for sale at below the published "list" price, and therefore, the representation that the Product had a "list" price of the amount listed on Defendant's website was false and misleading. The "list" price was not, in fact, an accurate reflection of the actual regular or normal price of the Product purchased by Plaintiff. They would not have made the purchase if they had known that the Product was not discounted as advertised, and that they were not receiving the advertised discount.

*Plaintiff Merritt's Experience*

69.     On March 14, 2019, Plaintiff Merritt purchased "4DONT WANT TO BE HERE MUG NONE", "DUMBO BLCK STR LNYD NONE", "4SELENA HOF. POP RED BOX PHOTO", and "PRINCE PURPOE RAIN POPVNL NONE" from Defendant. They purchased the Products from Defendant's website, HotTopic.com, while living in South Carolina. Plaintiff Merritt's invoice represented that they were receiving a substantial 20% discount off of the regular prices for the items

19

that they ordered. The invoice represented that the regular price of all items purchased was $112.00 plus tax, and that Plaintiff Merritt was receiving a discount of 20% (or $22.40).

70.    Defendant represented that the regular list price of the 4DONT WANT TO BE HERE MUG NONE" was $12.90; the "DUMBO BLCK STR LNYD NONE" was $9.90; the "4SELENA HOF. POP RED BOX PHOTO" was $21.90; and the "PRINCE PURPOE RAIN POPVNL NONE was $12.50. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Plaintiff Merritt's online Order Details (receipt showing a discount of $22.40).

71.    Plaintiff Merritt read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that they would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Plaintiff Merritt reasonably understood that the Products they were purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that these published list prices were the market values of the Products that they were buying, that they were receiving the advertised discount and a price reduction as compared to the regular prices, and that advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Products listed on Defendant's website did not normally sell at the published "list" prices. Rather, the Products were almost always available for sale at below the published "list" prices, and therefore, the representations that the Products had "list" prices of the amounts listed on Defendant's website were false and misleading. The "list" prices were not, in fact, accurate reflections of the actual regular or normal prices of the Products purchased by Plaintiff. They would not have made the purchases if they had known that the Products were not discounted as advertised, and that they were not receiving the advertised discounts.

*Plaintiff Jones' Experience*

72.    On January 7, 2020, Plaintiff Jones purchased nine Products from Defendant. They purchased the Products from Defendant's website, HotTopic.com, while living in Arlington, Virginia. Plaintiff Jones's invoice represented that they were receiving a substantial 20% discount off of the regular prices for the items that they ordered. The invoice represented that the regular price of the items purchased totaled $129.49 plus tax, and that Plaintiff Jones was receiving a discount of approximately 20% (or $24.76) off of a portion of her purchase.

73.    Defendant represented that the regular list prices of the Products were $129.49. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Plaintiff Jones's online Order Details (receipt showing a discount of $24.76).

74.    Plaintiff Jones read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that they would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Plaintiff Jones reasonably understood that the Products they were purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list prices, that these published list prices were the market value of the Products that they were buying, that they were receiving the advertised discounts and a price reductions as compared to the regular prices, and that the advertised discounts were only available for a limited time (during the limited time promotion). As explained herein, the Products listed on Defendant's website did not normally sell at the published "list" prices. Rather, the Products were almost always available for sale at below the published "list" prices, and therefore, the representations that the Products had "list" prices of the amounts listed on Defendant's website were false and misleading. The "list" prices were not, in fact, accurate reflections of the actual regular or normal prices of the Products purchased by Plaintiff. They would not have made the purchases if they had known that the Products were not discounted as advertised, and that they were not receiving the advertised discounts.

21

*Plaintiff Lashbrook's Experience*

75.     On October 1, 2021, Plaintiff Lashbrook purchased three jewelry Products from Defendant. They purchased the Products from Defendant's website, HotTopic.com, while living in Keego Harbor, Michigan. Plaintiff Lashbrook's invoice represented that they were receiving a substantial discount off of the regular prices for the item that they ordered (*i.e.* Plaintiff Lashbrook participated in a "buy two, get one free" promotion). The invoice represented that the regular price of all items purchased was $10.90, $9.90, and $14.90 plus tax, and that Plaintiff Lashbrook was receiving a discount of "buy two, get one free" (or $9.90). Since Plaintiff Lashbrook purchased three pieces of jewelry, one of the jewelry pieces was given to her for "free." In reality, she did not receive a free Product, since she could have obtained the Products at a price below the list price at any time on Defendant's website, since Defendant is always running a sale.

76.     Defendant represented that the regular list prices of the Products were $10.90, $9.90, and $14.90. Defendant represented that the Products had a certain regular price, and Defendant confirmed this in Plaintiff Lashbrook's online Order Details (receipt showing a discount of $9.90). The total price of the purchase, prior to the discount, was $35.70. After receiving the purported discount, the total price of the purchase was $25.80 (plus tax and shipping). This is equivalent to an approximate 27.73% discount. As stated throughout this Complaint, Defendant's products are always on sale, and so the discount Plaintiff Lashbrook received was not actually a discount at all.

77.     Plaintiff Lashbrook read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and had higher regular and usual prices, and that they would be receiving a price reduction by buying now. Based on Defendant's representations described and shown above, Plaintiff Lashbrook reasonably understood that the Product they were purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that these published list prices were the market value of

22

the Products that they were buying, that they were receiving the advertised discount and a price reduction as compared to the regular price, and that the advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Products listed on Defendant's website did not normally sell at the published "list" prices. Rather, the Products were almost always available for sale at below the published "list" prices, and therefore, the representations that the Products had "list" prices of the amounts listed on Defendant's website were false and misleading. The "list" prices were not, in fact, accurate reflections of the actual regular or normal prices of the Products purchased by Plaintiff. They would not have made the purchase if they had known that the Product was not discounted as advertised, and that they were not receiving the advertised discount.

*Plaintiff Basham's Experience*

78.      On September 11, 2023 Plaintiff Basham purchased a "Rib Cage Split Shark Bite Girls Tank Top" from Defendant. They purchased the Product from Defendant's website, HotTopic.com, while living in Layton, Utah. Plaintiff Basham's invoice represented that they were receiving a substantial 50% discount off of the regular price for the item that they ordered, plus an additional 25% off the purchase, plus Plaintiff Basham used a $5 "Insider Reward" coupon on her purchase. The invoice represented that the regular price of all items purchased was $23.99 plus tax, and that Plaintiff Basham was receiving a discount of 50% + 25% (or 62.5% off total).

79.      Defendant represented that the regular list price of the Rib Cage Split Shark Bite Girls Tank Top was $23.99. Defendant represented that the Product had a certain regular price, and Defendant confirmed this in Plaintiff Basham's online Order Details.

80.      Plaintiff Basham read and relied on Defendant's representations on Defendant's website, specifically that the Product was being offered at a discount for a limited time and had higher regular and usual prices, and that they would be receiving a price reduction by buying now. Based on

23

Defendant's representations described and shown above, Plaintiff Basham reasonably understood that the Product they were purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list price, that this published list price was the market value of the Product that they were buying, that they were receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). As explained herein, the Product listed on Defendant's website did not normally sell at the published "list" price. Rather, the Product was almost always available for sale at below the published "list" price, and therefore, the representation that the Product had a "list" price of the amount listed on Defendant's website was false and misleading. The "list" price was not, in fact, an accurate reflection of the actual regular or normal price of the Product purchased by Plaintiff. They would not have made the purchase if they had known that the Product was not discounted as advertised, and that they were not receiving the advertised discount.

81.    Before each Named Plaintiff made each of their purchases, they relied on the "X% Off" language and crossed out regular prices displayed on Defendant's product, shopping bag, and checkout pages. For example, Defendant's individual product pages show the currently applicable percentage discount for each specific Product in red.

82.    And Defendant's "Shopping Bag" and "Checkout" pages also show both the advertised discount in red font (e.g., "20% Off"), and the purported regular prices of the items in strikethrough font next to the lower discounted prices in red (e.g., "$23.00 $19.12").

83.    Shortly before they made their purchases, Plaintiffs saw and relied on the percentage discount language (e.g., 20% Off) on the product, shopping cart, and checkout pages. For example, shortly before Plaintiff Gurney made the purchase described above, she saw and relied on language claiming that she would receive "30% off" on the Products she purchased. Shortly before Plaintiff Davis made the purchase described above, he saw and relied on language claiming that he would receive

"20% off" on the Products he purchased. Shortly before Plaintiff Khan made the purchase described above, she saw and relied on language claiming that she would receive "40% off" on the Products she purchased. Shortly before Plaintiff Merritt made the purchase described above, she saw and relied on language claiming that she would receive "20% off" on the Products she purchased. Shortly before Plaintiff Jones made the purchase described above, she saw and relied on language claiming that she would receive approximately "20% off" on the Products she purchased. Shortly before Plaintiff Lashbrook made the purchase described above, she saw and relied on language claiming that she would receive a "buy two, get one free" deal on the Products she purchased. Shortly before Plaintiff Basham made the purchase described above, she saw and relied on language claiming that she would receive "50% off" plus "25% off" on the Products she purchased. Each Plaintiff reasonably understood this language to mean that they were receiving the advertised discounts as compared to the regular prices of the Products.

84.    Shortly before they made their purchases, Plaintiffs also saw and relied on the list prices displayed in strikethrough font alongside the purported discount prices in red font. They reasonably understood these representations to mean that the Products regularly and formerly sold at the struck-through prices, and had a market value equal to those prices, but were available at the red discount prices for a limited time (if they purchased during the sale).

85.    Plaintiffs would not have made the purchases if they had known that the Products were not discounted as advertised, and that they were not receiving the advertised discounts.

86.    Plaintiffs face an imminent threat of future harm. Plaintiffs would purchase Hot Topic Products from Defendant again in the future if they could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's list prices, discounts, and sales are not false or deceptive. For example,

while they could watch a sale until the countdown ends to see if the sale is permanent, doing so could result in them missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase the Products they would like to purchase.

E.    **Defendant breached its contract with and warranties to Plaintiffs and the putative class.**

87.    As explained above, when Plaintiffs purchased the Hot Topic Products, they relied on specific language claiming that the Products were for sale at "X% Off" of listed regular prices shown in strikethrough font. In purchasing and paying for the Products, Plaintiffs, and other putative class members, accepted offers that Defendant made, and thus, contracts were formed each time that they made the purchases. The offers were to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

88.    Each time that Plaintiff Gurney made a purchase at Hot Topic, she and Hot Topic entered a contract.

89.    Each time that Plaintiff Lashbrook made a purchase at Hot Topic, she and Hot Topic entered a contract.

90.    Each time that Plaintiff Khan made a purchase at Hot Topic, they and Hot Topic entered a contract.

91.    Each time that Plaintiff Merritt, made a purchase at Hot Topic, she and Hot Topic entered a contract.

92.    Each time that Plaintiff Davis made a purchase at Hot Topic, he and Hot Topic entered a contract.

93.    Each time that Plaintiff Jones made a purchase at Hot Topic, she and Hot Topic entered a contract.

94.    Each time that Plaintiff Basham made a purchase at Hot Topic, she and Hot Topic entered a contract.

95.    When Plaintiffs and other members of the putative class purchased and paid for the Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed at the time that they made the purchase. The offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

96.    Defendant's website and order details list the market value of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices listed by Defendant and the prices paid by Plaintiffs and putative class members.

97.    The regular price and market value of the items Plaintiffs and the putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

98.    Plaintiffs and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

99.    Defendant breached its contract by failing to provide Plaintiffs and other members of the putative class with Products that have a regular price and former price and market value equal to the regular list price displayed, and by failing to provide the discounts and price reductions it promised, in the amounts promised. Defendant also breached warranties for the same reasons.

F.    **No adequate remedy at law**.

100.    Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs also seek an injunction. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no

adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from continuing to engage in the deceptive practices described above. In addition, a legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. Furthermore, Plaintiffs' FAL claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims. Plaintiffs' remedies at law are also not equally prompt or efficient as their equitable ones. For example, the need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

V.    **CLASS ACTION ALLEGATIONS**.

101.    Plaintiffs bring the asserted claims on behalf of the proposed class of:

a.    The Nationwide Class: all persons who, while residents of the United States of America purchased one or more Products on Defendant's website within the applicable statute of limitations period.

b.    Maryland Subclass: all persons who, like Danielle Gurney while residents of the state of Maryland, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

c.    Michigan Subclass: all persons who, like Plaintiff Rebecca Lashbrook while residents of the state of Michigan, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

      d.     <u>New York Subclass</u>: all persons who, like Plaintiff Husnah Khan while residents of the state of New York, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

      e.     <u>South Carolina Subclass</u>: all persons who, like Plaintiff Natalie Merritt while residents of the state of South Carolina, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

      f.     <u>Texas Subclass</u>: all persons who, like Plaintiff Darius Davis while residents of the state of Texas, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

      g.     <u>Utah Subclass</u>: all persons who, like Plaintiff Brittany Basham, while residents of the state of Utah, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

      h.     <u>Virginia Subclass</u>: all persons who, like Plaintiff Shanika Jones while residents of the state of Virginia, purchased one or more Products on Defendant's website within the applicable statute of limitations period.

Excluded from the Classes are those individuals: (a) who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals; (b) persons who properly execute and file a timely request for exclusion from the class; (c) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (d) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (e) the legal representatives, successors, and assigns of any such excluded persons.

      102.     The Classes, as defined above, are identifiable. Named Plaintiffs are members of the Nationwide Class and the Subclasses.

103.    The Classes each consist, at a minimum, of fifty (50) persons and are thus so numerous that joinder of all members is clearly impracticable.

104.    Hot Topic's conduct harmed consumers and each Class Member and each Class has requested declaratory relief with respect to the Class as a whole. MD. RULE 2-231(c)(2).

105.    There are questions of law and fact which are not only common to each Class but which predominate over any questions affecting only individual class members. MD. RULE 2-231(c)(3).

106.    The common and predominating questions include, but are not limited to:

    a.    whether Defendant made false or misleading statements of fact in its advertisements;

    b.    whether Defendant violated California, Maryland, Michigan, New York, South Carolina, Texas, Utah, or Virginia's consumer protection statutes;

    c.    whether Defendant committed a breach of contract;

    d.    whether Defendant committed a breach of an express warranty;

    e.    damages needed to reasonably compensate Plaintiffs and the proposed classes.

107.    Claims of Named Plaintiffs are typical of the claims of the Class Members and are based on and arise out of similar facts constituting the wrongful conduct of Hot Topic.

108.    Named Plaintiffs will fairly and adequately protect the interests of each Class.

109.    Named Plaintiffs are committed to vigorously litigating this matter.

110.    Named Plaintiffs have secured counsel experienced in handling consumer class actions and complex consumer litigation.

111.    Neither Named Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

112.    The common questions of law and fact enumerated above predominate over questions affecting only individual Class Members. MD. RULE 2-231(c)(3).

113.    A class action is the superior method for fair and efficient adjudication of the controversy. MD. RULE 2-231(c)(3).

114.    The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

115.    The likelihood that individual Class Members will prosecute separate actions is remote also because each individual claim involves a relatively small amount.

116.    Counsel for Named Plaintiff and the Class are experienced in class actions and foresee little difficulty in the management of this case as a class action.

## VI.    **CAUSES OF ACTION**

### COUNT I
(Violation of the Maryland Consumer Protection Act
("MDCPA") – Md. Code Ann., Com. Law § 13-301, *et seq.*)
(By Plaintiff Gurney and the Maryland Subclass)

117.    Plaintiff Gurney incorporates each and every factual allegation set forth above.

118.    Plaintiff Gurney brings this cause of action on behalf of herself and members of the Maryland Subclass.

119.    Defendant has violated the Maryland Consumer Protection Act ("MDCPA"), Md. Code Ann., Com. Law § 13-301, *et seq.*

120.    The MDCPA prohibits unfair, abusive, or deceptive trade practices. Md. Code Ann., Com. Law § 13-301.

121.    Under the MDCPA, "unfair, abusive, or deceptive trade practices" include:

   a.   "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" (Md. Code Ann., Com. Law § 13-301(1))

31

b.  Representations that "[c]onsumer goods, consumer realty, or consumer services
    have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or
    quantity which they do not have;" (Md. Code Ann., Com. Law § 13-301(2)(i))

c.  "[f]ailure to state a material fact if the failure deceives or tends to deceive;" (Md.
    Code Ann., Com. Law § 13-301(3))

d.  advertisement of consumer goods "[w]ithout intent to sell, lease, or rent them as
    advertised or offered;" (Md. Code Ann., Com. Law § 13-301(5)(i))

e.  "[f]alse or misleading representation of fact which concerns . . . [t]he reason for or
    the existence or amount of a price reduction; or [a] price in comparison to a price of
    a competitor or to one's own price at a past or future time;" (Md. Code Ann., Com.
    Law § 13-301(i) and (ii))

f.  "[f]alse statement which concerns the reason for offering or supplying consumer
    goods, consumer realty, or consumer services at sale or discount prices;" (Md.
    Code Ann., Com. Law § 13-301(8)), and

g.  "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing
    concealment, suppression, or omission of any material fact with the intent that a
    consumer rely on the same in connection with . . . [t]he promotion or sale of any
    consumer goods, consumer realty, or consumer service[.]" (Md. Code Ann., Com.
    Law § 13-301(9)).

122.    Defendant is a "merchant," under the MDCPA, as defined by Md. Code Ann.,
Com. Law § 13-101(g)(1). A "merchant" means a "person who directly or indirectly either offers
or makes available to consumers any consumer goods[.]" *Id.*

123.    Defendant is also a "person" under the MDCPA, as defined by Md. Code Ann., Com. Law § 13-101(h). "Person" includes "an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity." *Id.*

124.    Defendant publishes "Advertisements" as defined by the MDCPA. Md. Code Ann., Com. Law § 13-101(b)(1). "Advertisement" means "the publication, dissemination, or circulation of any oral or written matter, including labeling, which directly or indirectly tends to induce a person to enter into an obligation, sign a contract, or acquire title or interest in any merchandise, real property, intangibles, or service." *Id.*

125.    Defendant engages in a trade practice subject to the MDCPA. Defendant does this by engaging in acts which create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." Defendant advertises and sells clothing and accessories in Maryland and serves a market for its Products in Maryland. Due to Defendant's actions, its Products have been marketed and sold to consumers in Maryland, and harmed consumers in Maryland, including Plaintiff Gurney. Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business.

126.    The clothing and accessories advertised, offered, and sold by Defendant are "consumer goods" that are or may be obtained primarily for personal, family, or household purposes as defined by the MDCPA. Plaintiff Gurney and the Maryland Subclass are "consumers" who purchased the Products advertised by Defendant for personal, family, or household purposes.

127.    As alleged in greater detail above, Defendant makes "[f]alse or misleading representation of fact which concerns . . . [t]he reason for or the existence or amount of a price reduction; or [a] price in comparison to a price of a competitor or to one's own price at a past or

future time;" (Md. Code Ann., Com. Law § 13-301(i) and (ii)). Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

128.    As alleged in greater detail above, Defendant also advertises consumer goods "[w]ithout intent to sell, lease, or rent them as advertised or offered;" (Md. Code Ann., Com. Law § 13-301(5)(i)). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

129.    As alleged in greater detail above, Defendant also represents that "[c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;" (Md. Code Ann., Com. Law § 13-301(2)(i)).

130.    The MDCPA also prohibits sellers from using false or misleading price comparisons to advertise their products. Md. Code Ann., Com. Law § 13-301(i) and (ii). Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own former price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is

comparing to the seller's current price as the seller's former price. As alleged in greater detail above, Defendant uses misleading price comparisons.

131.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

132.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

133.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

134.    Defendant's use of list prices, sitewide sales, and advertised discounts constitute "[f]alse statement[s] which concerns the reason for offering or supplying consumer goods, consumer realty, or consumer services at sale or discount prices;" (Md. Code Ann., Com. Law § 13-301(8)) and also "[f]alse or misleading representation of fact which concerns . . . [t]he reason for or the existence or amount of a price reduction; or [a] price in comparison to a price of a competitor or to one's own price at a past or future time;" (Md. Code Ann., Com. Law § 13-301(i) and (ii)).These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

135.    Defendant's unlawful methods, acts and practices described above were willful violations of the MDCPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under other states' consumer protection laws. *Jamie*

*Zuccaro, et al. v. Hot Topic, Inc.*, Case No. 3:23-cv-1242 (United States District Court for the District of Oregon).

136.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Gurney and the Maryland Subclass; (2) Defendant concealed material information from Plaintiff Gurney and the Maryland Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

137.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive a reasonable consumer and the general public.

138.    Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

139.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

140.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Gurney and the Maryland Subclass members suffered ascertainable losses and injury to business or property.

141.    Plaintiff Gurney and the Maryland Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

142.    Plaintiff Gurney and the Maryland Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

143.    The Products that Plaintiff Gurney and the Maryland Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

144.    Plaintiff Gurney seeks, on behalf of herself and the Maryland Subclass: (1) actual damages; and (2) attorneys' fees and costs. Md. Code Ann., Com. Law § 13-408.

145.    Plaintiff Gurney and the Maryland Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

146.    Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

147.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

### COUNT II
(Violation of the Michigan Consumer Protection Act
("MICPA") – Mich. Comp. Laws Ann. § 445.901, *et seq.*)
(By Plaintiff Rebecca Lashbrook and the Michigan Subclass)

148.    Plaintiff Lashbrook incorporates each and every factual allegation set forth above.

149.    Plaintiff Lashbrook brings this cause of action on behalf of herself and members of the Michigan Subclass.

150.    Defendant has violated the Michigan Consumer Protection Act ("MICPA"), Mich. Comp. Laws Ann. § 445.901, *et seq.*

151.    The MICPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws Serv. § 445.903.

152.    Under the MICPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" include:

     a.    "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Mich. Comp. Laws Serv. § 445.903(c).

     b.    "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Mich. Comp. Laws Serv. § 445.903(e).

     c.    "[a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented." Mich. Comp. Laws Serv. § 445.903(f).

     d.    "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Mich. Comp. Laws Serv. § 445.903(i).

     e.    "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Mich. Comp. Laws Serv. § 445.903(s).

     f.   "[m]aking a representation of fact or statement of fact material to the transaction

such that a person reasonably believes the represented or suggested state of affairs

to be other than it actually is." Mich. Comp. Laws Serv. § 445.903(bb).

153.    Defendant is also a "person" under the MICPA, as defined by Mich. Comp. Laws

Serv. § 445.902. "Person" means "an individual, corporation, limited liability company, trust,

partnership, incorporated or unincorporated association, or other legal entity."

154.    Defendant engages in a trade or commerce subject to the MICPA. "Trade or

commerce" means "the conduct of a business providing goods, property, or service primarily for

personal, family, or household purposes and includes the advertising, solicitation, offering for sale

or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or

mixed, or any other article, or a business opportunity." Mich. Comp. Laws Serv. § 445.902(1)(g).

Defendant engages in trade or commerce by advertising and selling goods primarily for personal,

family, or household purposes in Michigan. Due to Defendant's actions, its Products have been

marketed and sold to consumers in Michigan, and harmed consumers in Michigan, including

Plaintiff Lashbrook. Defendant's unlawful methods, acts and practices described above were

committed in the course of Defendant's business.

155.    The clothing and accessories advertised, offered, and sold by Defendant are

consumer goods that are or may be obtained primarily for personal, family, or household purposes

as defined by the MICPA. Plaintiff Lashbrook and the Michigan Subclass are consumers and

persons who purchased the Products advertised by Defendant for personal, family, or household

purposes.

156.    As alleged in greater detail above, Defendant makes "false or misleading statements

of fact concerning the reasons for, existence of, or amounts of price reductions." Mich. Comp.

Laws Serv. § 445.903(i). Defendant does this by advertising fake sales, fake list prices, and fake

limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

157.    As alleged in greater detail above, Defendant also "[a]dvertis[es] or represent[s] goods or services with intent not to dispose of those goods or services as advertised or represented." Mich. Comp. Laws Serv. § 445.903(f). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

158.    As alleged in greater detail above, Defendant also represents that its "goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Mich. Comp. Laws Serv. § 445.903(c). Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

159.    MICPA also prohibits sellers from "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. Laws Serv. § 445.903(bb). Defendant violates this provision by using false or misleading price comparisons to advertise their products. Use of the term "sale" identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own former price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the

price that the seller is comparing to the seller's current price as the seller's former price. As alleged in greater detail above, Defendant uses misleading price comparisons.

160.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

161.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

162.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

163.    Defendant's use of list prices, sitewide sales, and advertised discounts constitute "representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is." Mich. Comp. Laws Serv. § 445.903(bb). These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

164.    Defendant's unlawful methods, acts, and practices described above were willful violations of MICPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under Michigan's consumer protection laws.

165.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the

true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Lashbrook and the Michigan Subclass; (2) Defendant concealed material information from Plaintiff Lashbrook and the Michigan Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

166.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive a reasonable consumer and the general public.

167.    Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

168.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

169.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Lashbrook and the Michigan Subclass members suffered ascertainable losses and injury to business or property.

170.    Plaintiff Lashbrook and the Michigan Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

171.    Plaintiff Lashbrook and the Michigan Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

172.    The Products that Plaintiff Lashbrook and the Michigan Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

173. Plaintiff Lashbrook seeks, on behalf of herself and the Michigan Subclass: (1) actual damages; (2) appropriate equitable relief and/or restitution; and (3) attorneys' fees and costs. Mich. Comp. Laws Serv. § 445.911.

174. The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Lashbrook seeks an order enjoining Defendant from committing such unlawful practices. Mich. Comp. Laws Serv. § 445.911.

175. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Lashbrook, the Michigan Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff Lashbrook, the Michigan Subclass members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff Lashbrook and Michigan consumers through the misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

176. Plaintiff Lashbrook and the Michigan Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

177. Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased. They do not know that the

discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

178.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

### COUNT III
(Violation of the New York Consumer Protection Act ("NYCPA") – N.Y. Gen. Bus. Law § 349, *et seq.*)
(By Plaintiff Husnah Khan and the New York Subclass)

179.    Plaintiff Khan incorporates each and every factual allegation set forth above.

180.    Plaintiff Khan brings this cause of action on behalf of herself and members of the New York Subclass.

181.    Defendant has violated the New York Consumer Protection ACT ("NYCPA"), N.Y. Gen. Bus. Law § 349, *et seq.*

182.    The NYCPA declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in this state[.]" N.Y. Gen. Bus. Law § 349.

183.    Additionally, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. Law § 350.

184.    The NYCPA defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the

advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." N.Y. Gen. Bus. Law § 350-a.

185.    Defendant engages in business, trade, or commerce subject to the NYCPA. Defendant engages in trade or commerce by advertising and selling goods primarily for personal, family, or household purposes in New York. Due to Defendant's actions, its Products have been marketed and sold to consumers in New York, and harmed consumers in New York, including Plaintiff Khan. Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business.

186.    The clothing and accessories advertised, offered, and sold by Defendant are consumer goods that are or may be obtained primarily for personal, family, or household purposes. Plaintiff Khan and the New York Subclass are consumers and persons who purchased the Products advertised by Defendant for personal, family, or household purposes.

187.    As alleged in greater detail above, Defendant makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of one's own price at a past or future time. This constitutes a "[d]eceptive act[] or practice[] in the conduct of any business, trade or commerce" in New York. N.Y. Gen. Bus. Law § 349. This also constitutes materially misleading "false advertising" under N.Y. Gen. Bus. Law § 350-a. Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions

true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

188.    As alleged in greater detail above, Defendant also advertises goods without the intent to sell them as advertised or offered. This constitutes a "[d]eceptive act[] or practice[] in the conduct of any business, trade or commerce" in New York. N.Y. Gen. Bus. Law § 349. This also constitutes materially misleading "false advertising" under N.Y. Gen. Bus. Law § 350-a.

189.    Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

190.    As alleged in greater detail above, Defendant also represents that goods have characteristics that they do not have. This constitutes a "[d]eceptive act[] or practice[] in the conduct of any business, trade or commerce" in New York. N.Y. Gen. Bus. Law § 349. This also constitutes materially misleading "false advertising" under N.Y. Gen. Bus. Law § 350-a. Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

191.    The NYCPA also implicitly prohibits sellers from using false or misleading price comparisons to advertise their products. Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own former price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price. As alleged in greater detail above, Defendant uses misleading price comparisons. This constitutes a "[d]eceptive act[] or practice[] in the conduct of any business, trade or commerce" in New York. N.Y. Gen, Bus. Law § 349. This also constitutes materially misleading "false advertising" under N.Y. Gen. Bus. Law § 350-a.

192.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

193.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

194.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

195.    Defendant's use of list prices, sitewide sales, and advertised discounts constitutes a "[d]eceptive act[] or practice[] in the conduct of any business, trade or commerce" in New York. N.Y. Gen. Bus. Law § 349. This also constitutes materially misleading "false advertising" under N.Y. Gen. Bus. Law § 350-a. These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

196.    Defendant's unlawful methods, acts and practices described above were willful violations of NYCPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under New York's consumer protection laws.

197.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Khan and the New York Subclass; (2) Defendant concealed material information from Plaintiff Khan and the New York

Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

198. Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive a reasonable consumer and the general public.

199. Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

200. Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

201. As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Khan and the New York Subclass members suffered ascertainable losses and injury to business or property.

202. Plaintiff Khan and the New York Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

203. Plaintiff Khan and the New York Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

204. The Products that Plaintiff Khan and the New York Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

205. Plaintiff Khan seeks, on behalf of herself and the New York Subclass: the greater of (1) actual damages; (2) statutory damages of $50 per violation; (3) treble damages; (4) appropriate equitable relief and/or restitution; and (5) attorneys' fees and costs. N.Y. Gen. Bus. Law § 349

206.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Khan seeks an order enjoining Defendant from committing such unlawful practices. N.Y. Gen. Bus. Law § 349

207.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Khan, the New York Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff Khan, the New York Subclass members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff Khan and New York consumers through the misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

208.    Plaintiff Khan and the New York Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

209.    Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

210.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

## COUNT IV
(Violation of the South Carolina Unfair Trade Practices Act
("SCUTPA") – S.C. Code Ann. § 39-5-10, *et seq.*)
(By Plaintiff Natalie Merritt and the South Carolina Subclass)

211.    Plaintiff Merritt incorporates each and every factual allegation set forth above.

212.    Plaintiff Merritt brings this cause of action on behalf of herself and members of the South Carolina Subclass.

213.    Defendant has violated the South Carolina Unfair Trade Practices Act ("SCUTPA"). S.C. Code Ann. § 39-5-10, *et seq.*

214.    The SCUTPA prohibits unlawful or deceptive trade practices.

215.    Under the SCUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. S.C. Code Ann. § 39-5-20.

216.    Plaintiff Merritt and the South Carolina Subclass are "Person[s]" as defined by the SCUTPA, as they are natural persons.  Plaintiff Merritt and the South Carolina Subclass meet this broad definition.

217.    Defendant engages in a "[t]rade" or "commerce" under the SCUTPA. Defendant does this by "advertising, offering for sale, [selling] or distribut[ing] . . . property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State." S.C. Code Ann. § 39-5-10.

218.    Defendant advertises and sells clothing and accessories in the South Carolina, and serves a market for its Products in South Carolina. Due to Defendant's actions, its Products have been marketed and sold to consumers in South Carolina, and harmed consumers in South Carolina,

including Plaintiff Merritt. Defendant's unlawful methods, acts, and practices described above were committed in the course of Defendant's business.

219.    The clothing and accessories advertised, offered, and sold by Defendant are goods that are or may be obtained primarily for personal, family or household use. Plaintiff Merritt and the South Carolina Subclass are people and consumers who purchased the Products advertised by Defendant for personal, family, or household purposes.

220.    As alleged in greater detail above, Defendant makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of one's own price at a past or future time. This constitutes an "[u]nfair method[] of competition and [an] unfair or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20. Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

221.    As alleged in greater detail above, Defendant also advertises goods without the intent to sell them as advertised or offered. This constitutes an "[u]nfair method[] of competition and [an] unfair or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20.

222.    Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

223.    As alleged in greater detail above, Defendant also represents that goods have characteristics that they do not have. This constitutes an "[u]nfair method[] of competition and [an] unfair or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20. Defendant represents that the value of its Products is greater than it actually is by advertising fake discounts for the Products.

224.    The SCUTPA also implicitly prohibits sellers from using false or misleading price comparisons to advertise their products. Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own former price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price. As alleged in greater detail above, Defendant uses misleading price comparisons. This constitutes an "[u]nfair method[] of competition and [an] unfair or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20.

225.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

226.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

227.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future

price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

228.    Defendant's use of list prices, sitewide sales, and advertised discounts constitutes an "[u]nfair method[] of competition and [an] unfair or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20. These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

229.    Defendant's unlawful methods, acts and practices described above were willful violations of the SCUTPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under South Carolina's consumer protection laws.

230.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Merritt and the South Carolina Subclass; (2) Defendant concealed material information from Plaintiff Merritt and the South Carolina Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

231.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive, and did deceive, a reasonable consumer and the general public.

232.    Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

233.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

234.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Merritt and the South Carolina Subclass members suffered ascertainable losses and injury to business or property.

235.    Plaintiff Merritt and the South Carolina Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

236.    Plaintiff Merritt and the South Carolina Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

237.    The Products that Plaintiff Merritt and the South Carolina Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

238.    Plaintiff Merritt seeks, on behalf of herself and the South Carolina Subclass: (1) actual damages; (2) treble damages, (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs. S.C. Code Ann. § 39-5-140.

239.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Merritt seeks an order declaring such practices unlawful and enjoining Defendant from committing such unlawful practices.

240.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Merritt, the South Carolina Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff

Merritt, the South Carolina Subclass members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff Merritt and South Carolina consumers through the misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

241.    Plaintiff Merritt and the South Carolina Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

242.    Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

243.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

### COUNT V
(Violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") – Tex. Bus. & Com. Code § 17.41, *et seq*.) (By Plaintiff Darius Davis and the Texas Subclass)

244.    Plaintiff Davis incorporates each and every factual allegation set forth above.

245.    Plaintiff Davis brings this cause of action on behalf of himself and members of the Texas Subclass.

246.    Defendant has violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

247.    The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[.]" Tex. Bus. & Com. Code § 17.46.

248.    Under the DTPA, "[f]alse, misleading, or deceptive acts or practices" include:

   a.    "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (Tex. Bus. & Com. Code § 17.46(5)).

   b.    "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" (Tex. Bus. & Com. Code § 17.46(7)).

   c.    "advertising goods or services with intent not to sell them as advertised;" (Tex. Bus. & Com. Code § 17.46(9)).

   d.    "making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;" (Tex. Bus. & Com. Code § 17.46(11)).

249.    Defendant is a "person," under the DTPA, as defined by Tex. Bus. & Com. Code § 17.45. "Person" means "an individual, partnership, corporation, association, or other group, however organized." *Id.*

250.    Defendant advertises and sells "goods" as defined by the DTPA. "Goods" means "tangible chattels or real property purchased or leased for use." Tex. Bus. & Com. Code § 17.45.

251.    Plaintiff and members of the Texas Subclass are "consumers" under the DTPA. "Consumer" means "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services . . . ." Tex. Bus. & Com. Code § 17.45.

252.    Defendant, as described herein, regularly engages in "Unconscionable action or course of action" under the DTPA, which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45.

253.    Defendant engages in a "[t]rade" and "commerce" subject to the DTPA. Trade and commerce mean "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state." Tex. Bus. & Com. Code § 17.45. Defendant does this by engaging in acts which create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services. Defendant advertises and sells clothing and accessories in Texas and serves a market for its Products in Texas. Due to Defendant's actions, its Products have been marketed and sold to consumers in Texas, and harmed consumers in Texas, including Plaintiff Davis. Defendant's unlawful methods, acts and practices described above were committed in the course of Defendant's business.

254.    The clothing and accessories advertised, offered, and sold Defendant are "goods" that are or may be obtained primarily for personal, family, or household purposes. Plaintiff Davis and the Texas Subclass are "consumers" who purchased the Products advertised by Defendant for personal, family, or household purposes.

255. As alleged in greater detail above, Defendant makes "false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;" (Tex. Bus. & Com. Code § 17.46(11)). Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

256. As alleged in greater detail above, Defendant also advertises consumer "goods or services with intent not to sell them as advertised;" (Tex. Bus. & Com. Code § 17.46(9)). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

257. As alleged in greater detail above, Defendant also represents that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (Tex. Bus. & Com. Code § 17.46(5)).

258. The DTPA also implicitly prohibits sellers from using false or misleading price comparisons to advertise their products. Tex. Bus. & Com. Code § 17.46(11). Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own former price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is

58

comparing to the seller's current price as the seller's former price. As alleged in greater detail above, Defendant uses misleading price comparisons.

259.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

260.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

261.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's former price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

262.    Defendant's use of list prices, sitewide sales, and advertised discounts constitute "[f]alse, misleading, or deceptive acts or practices[.]" Tex. Bus. & Com. Code § 17.46. These statements make a claim that the current price is reduced as compared to a Product's typical or former price.

263.    Defendant's unlawful methods, acts and practices described above were knowing and willful violations of the DTPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under Texas's consumer protection laws.

264.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the

59

true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Davis and the Texas Subclass; (2) Defendant concealed material information from Plaintiff Davis and the Texas Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

265.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive a reasonable consumer and the general public.

266.    Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

267.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here. Under the DTPA, "[k]nowingly" means "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim[.]" Tex. Bus. & Com. Code § 17.45

268.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Davis and the Texas Subclass members suffered ascertainable losses and injury to business or property.

269.    Plaintiff Davis and the Texas Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

270.    Plaintiff Davis and the Texas Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

271.    The Products that Plaintiff Davis and the Texas Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

272.    Plaintiff Davis seeks, on behalf of himself and the Texas Subclass: the greater of (1) actual damages; (2) treble damages; (3) restitution; (4) declaratory and injunctive relief; and (5) attorneys' fees and costs. Tex. Bus. & Com. Code § 17.50

273.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Davis seeks an order enjoining Defendant from committing such unlawful practices. Tex. Bus. & Com. Code § 17.50

274.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Davis, the Texas Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff Davis, the Texas Subclass members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff Davis and Texas consumers through the misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

275.    Plaintiff Davis and the Texas Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

276.    Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales

histories of the Products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

277.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

**COUNT VI**
(Violation of the Utah Truth in Advertising Act ("UTIAA")
– Utah Code Ann. § 13-11a-1, *et seq.*)
(By Plaintiff Brittany Basham and the Utah Subclass)

278.    Plaintiff Brittany Basham incorporates each and every factual allegation set forth above.

279.    Plaintiff Basham brings this cause of action on behalf of herself and members of the Utah Subclass.

280.    Defendant has violated the Utah Truth in Advertising Act ("UTIAA"), Utah Code Ann. § 13-11a-1, *et seq.*

281.    The purpose of the UTIAA is to "prevent deceptive, misleading, and false advertising practices and forms in Utah." Utah Code Ann. § 13-11a-1.

282.    Under the UTIAA § 13-11a-3, deceptive trade practices occur when, "in the course of a person's business, vocation, or occupation that person":

   a.    "Deceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person:

   b.    "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a

sponsorship, approval, status, affiliation, or connection that the person does not have;" Utah Code Ann. § 13-11a-3(e).

c. "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" Utah Code Ann. § 13-11a-3(g).

d. "advertises goods or services or the price of goods and services with intent not to sell them as advertised;" Utah Code Ann. § 13-11a-3(i).

e. "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, including the false use of . . . the . . . expression[] . . . "final days[.]" Utah Code Ann. § 13-11a-3(k).

f. "represents, in an advertisement of a reduction from the supplier's own prices, that the reduction is from a regular price, when the former price is not a regular price as defined in Subsection 13-11a-2(14);" Utah Code Ann. § 13-11a-3(p).

g. "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Utah Code Ann. § 13-11a-3(t).

283.    Defendant is a "person," under the UTIAA, as defined by Utah Code Ann. § 13-11a-2. "Person" means "an individual, including a consumer, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity." *Id.*

284.    Defendant advertises and sells "goods" as defined by the UTIAA. "Goods" means "all items which may be the subject of a sales transaction. Utah Code Ann. § 13-11a-2.

285.    As alleged herein, Defendant publishes "[a]dvertisements" under the UTIAA. "Advertisement" means "any written, oral, or graphic statement or representation made by a supplier in connection with the solicitation of business. It includes, but is not limited to, communication by noncable television systems, radio, printed brochures, newspapers, leaflets, flyers, circulars, billboards, banners, or signs." Utah Code Ann. § 13-11a-2(1).

286.    As alleged herein, Defendant regularly makes "[p]rice comparison[s]." "Price comparison" means "any express representation that a specific savings, reduction, or discount exists or will exist between the supplier's advertised price and another specific price." Utah Code Ann. § 13-11a-2(10).

287.    As alleged herein, Defendant regularly refers to "Reference prices." "Reference price" means "a higher price to which a supplier compares a lower price to indicate that a reduction in price exists or will exist." Utah Code Ann. § 13-11a-2(13).

288.    As alleged herein, Defendant regularly refers to "Regular price[s]" in its advertisements. "Regular price" means "the price at which a supplier has recently offered the goods or services for sale in good faith in the regular course of business. Every price represented in an advertisement is considered a regular price unless it is specifically represented as a price other than a regular price, such as a discount price or a manufacturer's suggested price. It is prima facie evidence that a price is other than a regular price when it was not offered as the nondiscount price of the goods or services for the 15 days immediately preceding an advertisement of the price, and the price change during the 15 day period was not due to price changes inherent in the pricing of seasonal or perishable goods, due to changes in cost of the goods or services to the supplier, or due to pricing changes made to match a competitor's price." Utah Code Ann. § 13-11a-2(14).

289.    As alleged herein, Defendant regularly engages in "Sales transactions" with Plaintiff and members of the Utah Subclass. "Sales transaction" means "a sale, lease, assignment,

award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance), to a person or business, or a solicitation or offer by a supplier with respect to any of these transfers or dispositions. It includes any offer or solicitation, any agreement, and any performance of an agreement with respect to any of these transfers or dispositions." Utah Code Ann. § 13-11a-2(15).

290.    Plaintiff and members of the Utah Subclass are consumers and persons under the UTIAA.

291.    Defendant engages in advertisements subject to the UTIAA. Defendant does this by making written representations to Utah consumers in connection with the solicitation of business. Utah Code Ann. § 13-11a-2.

292.    The clothing and accessories advertised, offered, and sold Defendant are "goods" that are or may be obtained primarily for personal, family, or household purposes. Plaintiff Basham and the Utah Subclass are consumers and persons who purchased the Products advertised by Defendant for personal, family, or household purposes.

293.    As alleged in greater detail above, Defendant "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions, including the false use of . . . the . . . expression[] . . . final days[.]" Utah Code Ann. § 13-11a-3(k). Defendant does this by advertising fake sales, fake list prices, and fake limited time sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because

Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

294.    As alleged in greater detail above, Defendant also "advertises goods or services or the price of goods and services with intent not to sell them as advertised[.]" Utah Code Ann. § 13-11a-3(i). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

295.    As alleged in greater detail above, Defendant also "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have[.]" Utah Code Ann. § 13-11a-3(e).

296.    The UTIAA also prohibits a person from "represent[ing], in an advertisement of a reduction from the supplier's own prices, that the reduction is from a regular price, when the former price is not a regular price as defined in Subsection 13-11a-2(14);" Utah Code Ann. § 13-11a-3(p). Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own regular price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is comparing to the seller's current price as the seller's regular price. As alleged in greater detail above, Defendant uses misleading price comparisons.

297.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

298.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price (i.e. the "regular price").

299.    In addition, as alleged in greater detail above, Defendant uses the word "sale,"

"discount," and "[X]% Off," in its promotions, even when the Products are not offered at a

discount as compared to the seller's regular price (or in the case of introductory products, a future

price). Defendant also makes no disclosure indicating that the price comparisons are to something

other than the former or future price.

300.    Defendant's use of list prices, sitewide sales, and advertised discounts "creates a

likelihood of confusion or of misunderstanding." Utah Code Ann. § 13-11a-3(t). These statements

make a claim that the current price is reduced as compared to a Product's regular price.

301.    Defendant's unlawful methods, acts and practices described above were knowing

and willful violations of the UTIAA because Defendant knew or should have known that its

conduct was a violation. For example, Defendant knows that its actions are misleading and

deceptive, because it was already sued for the same behavior under Utah's consumer protection

laws.

302.    Defendant, at all relevant times, had a duty to disclose that the discounts were not

real, that the sales persisted and were not limited in time, and that the regular prices were not the

true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive

knowledge of material information that was not known to Plaintiff Basham and the Utah Subclass;

(2) Defendant concealed material information from Plaintiff Basham and the Utah Subclass; and

(3) Defendant made partial representations which were false and misleading absent the omitted

information.

303.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to,

and did, deceive a reasonable consumer and the general public.

304.    Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

305.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

306.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Basham and the Utah Subclass members suffered ascertainable losses and injury to business or property.

307.    Plaintiff Basham and the Utah Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

308.    Plaintiff Basham and the Utah Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

309.    The Products that Plaintiff Basham and the Utah Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

310.    Plaintiff Basham seeks, on behalf of herself and the Utah Subclass: the greater of (1) actual damages; (2) statutory damages of $2,000 per violation; (3) restitution; (4) declaratory and injunctive relief; and (5) attorneys' fees and costs. Utah Code Ann. § 13-11a-4.

311.    The unlawful acts and omissions described here are, and continue to be, part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff Basham seeks an order enjoining Defendant from committing such unlawful practices. Utah Code Ann. § 13-11a-4(1)(a).

312.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff Basham, the Utah Subclass members, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff Basham, the Utah Subclass members, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff Basham and Utah consumers through the misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

313.    Plaintiff Basham and the Utah Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

314.    Absent class members of the subclass are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false advertising scheme by its very nature is hidden and difficult for the typical consumer to discover. Consumers who shop on Defendant's website do not know the true historical prices or sales histories of the Products that they have viewed and purchased. They do not know that the discounts offered are false, or that the false discounting practices extend to all of Defendant's Products. Subclass members have not discovered, and could not have reasonably discovered, Defendant's fake discounting scheme.

315.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

**COUNT VII**
(Violation of the Virginia Consumer Protection Act of 1977 ("VCPA"))

– Va. Code Ann. § 59.1-196, *et seq.*)
(By Plaintiff Shanika Jones and the Virginia Subclass)

316.     Plaintiff Jones incorporates each and every factual allegation set forth above.

317.     Plaintiff Jones brings this cause of action on behalf of herself and members of the

Virginia Subclass.

318.     Defendant has violated the Virginia Consumer Protection Act of 1977 ("VCPA"),

Va. Code Ann. § 59.1-196, *et seq.*

319.     The purpose of the VCPA is to "promote fair and ethical standards of dealings

between suppliers and the consuming public." Va. Code Ann. § 59.1-197.

320.     Under the VCPA § 59.1-200, the following fraudulent acts or practices committed

by a supplier in connection with a consumer transaction are declared unlawful:

    a.  "Misrepresenting that goods or services have certain quantities, characteristics,
        ingredients, uses, or benefits;" Va. Code Ann. § 59.1-200(5).

    b.  "Misrepresenting that goods or services are of a particular standard, quality, grade,
        style, or model;" Va. Code Ann. § 59.1-200(6).

    c.  "Advertising goods or services with intent not to sell them as advertised, or with
        intent not to sell at the price or upon the terms advertised." Va. Code Ann. § 59.1-
        200(8).

    d.  "Making false or misleading statements of fact concerning the reasons for,
        existence of, or amounts of price reductions;" Va. Code Ann. § 59.1-200(9).

    e.  "Using any other deception, fraud, false pretense, false promise, or
        misrepresentation in connection with a consumer transaction;" Va. Code Ann. §
        59.1-200(14).

321.    Defendant is a "person," under the VCPA, as defined by Va. Code Ann. § 59.1-198. "Person" means "any natural person, corporation, trust, partnership, association and any other legal entity." *Id.*

322.    Defendant is also a "supplier" under the VCPA, as defined by Va. Code Ann. § 59.1-198. "Supplier" means a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions. *Id.*

323.    Defendant advertises and sells "goods" as defined by the VCPA § 59.1-198. "Goods" means "all real, personal or mixed property, tangible or intangible." *Id.*

324.    As alleged herein, Defendant enters into "consumer transactions" with Plaintiff and members of the Virginia Subclass. "Consumer transaction" means "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes[.]" Va. Code Ann. § 59.1-198.

325.    Plaintiff and members of the Virginia Subclass are consumers and persons under the VCPA.

326.    The clothing and accessories advertised, offered, and sold by Defendant are "goods" that are or may be obtained primarily for personal, family, or household purposes. Plaintiff Jones and the Virginia Subclass are consumers and persons who purchased the Products advertised by Defendant for personal, family, or household purposes.

327.    As alleged in greater detail above, Defendant makes "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" Va. Code Ann. § 59.1-200(9). Defendant does this by advertising fake sales, fake list prices, and fake limited time

sales. By advertising regular list prices and supposedly time-limited discounts, Defendant's website creates an illusion that consumers are receiving a limited-time discount if they buy now. In truth, however, Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions. Because Defendant always offers sitewide discounts, as well as discounts on certain items, it does not ordinarily or typically sell its Products at the purported regular prices.

328.    As alleged in greater detail above, Defendant also "adverti[ses] goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised." Va. Code Ann. § 59.1-200(8). Defendant advertises Products at a sale price, or discount, as compared to a regular list price. But the purported discounts that Defendant advertises are not the true discounts that the customer receives. In many cases, the customer receives no discount at all.

329.    As alleged in greater detail above, Defendant also "misrepresent[s] that goods or services are of a particular standard, quality, grade, style, or model;" Va. Code Ann. § 59.1-200(6).

330.    The VCPA also prohibits a person from "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction;" Va. Code Ann. § 59.1-200(14). Use of term "sale" is identifies the origin of the price that the seller is comparing to the seller's current price as the seller's own regular price. And, use of the terms "discount," "[X] percent discount," "$[X] discount," "[X]percent off," and "$[X] off" identify the origin of the price that the seller is comparing to the seller's current price as the seller's regular price. As alleged in greater detail above, Defendant uses misleading price comparisons, which constitutes deception, fraud, false promise, and misrepresentation.

331.    For example, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.

332.    Defendant's strikethrough pricing does not contain any disclosures at all about the origin of the strikethrough price.

333.    In addition, as alleged in greater detail above, Defendant uses the word "sale," "discount," and "[X]% Off," in its promotions, even when the Products are not offered at a discount as compared to the seller's regular price (or in the case of introductory products, a future price). Defendant also makes no disclosure indicating that the price comparisons are to something other than the former or future price.

334.    Defendant's use of list prices, sitewide sales, and advertised discounts creates a likelihood of confusion or of misunderstanding. These statements make a claim that the current price is reduced as compared to a Product's regular price.

335.    Defendant's unlawful methods, acts and practices described above were knowing and willful violations of the VCPA because Defendant knew or should have known that its conduct was a violation. For example, Defendant knows that its actions are misleading and deceptive, because it was already sued for the same behavior under Virginia's consumer protection laws.

336.    Defendant, at all relevant times, had a duty to disclose that the discounts were not real, that the sales persisted and were not limited in time, and that the regular prices were not the true regular prices of the Products. Defendant had a duty because (1) Defendant had exclusive knowledge of material information that was not known to Plaintiff Jones and the Virginia Subclass; (2) Defendant concealed material information from Plaintiff Jones and the Virginia

Subclass; and (3) Defendant made partial representations which were false and misleading absent the omitted information.

337.   Defendant's misrepresentations and nondisclosures deceive and have a tendency to, and did, deceive a reasonable consumer and the general public.

338.   Defendant's misrepresentations and nondisclosures are material. A reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

339.   Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged here.

340.   As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff Jones and the Virginia Subclass members suffered ascertainable losses and injury to business or property.

341.   Plaintiff Jones and the Virginia Subclass members would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were false.

342.   Plaintiff Jones and the Virginia Subclass members paid more than they otherwise would have paid for the Products they purchased from Defendant. Defendant's false pricing scheme fraudulently increased demand from consumers.

343.   The Products that Plaintiff Jones and the Virginia Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

344.   Plaintiff Jones seeks, on behalf of herself and the Virginia Subclass: the greater of (1) actual damages; (2) treble damages; (3) statutory damages of $500 per willful violation; (4) restitution; and (5) attorneys' fees and costs. Va. Code Ann. § 59.1-204.

345.     The unlawful acts and omissions described here are, and continue to be, part of a
pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue
and recur absent a permanent injunction. Accordingly, Plaintiff Jones seeks an order enjoining
Defendant from committing such unlawful practices.

346.     The balance of the equities favors the entry of permanent injunctive relief against
Defendant. Plaintiff Jones, the Virginia Subclass members, and the general public will be
irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff
Jones, the Virginia Subclass members, and the general public lack an adequate remedy at law. A
permanent injunction against Defendant is in the public's interest. Defendant's unlawful behavior
is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court,
Defendant will or may continue to injure Plaintiff Jones and Virginia consumers through the
misconduct alleged. Absent the entry of a permanent injunction, Defendant's unlawful behavior
will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is
likely to reoccur.

347.     Plaintiff Jones and the Virginia Subclass members did not know, and could not
have known, that these reference prices and discount representations were false.

348.     Absent class members of the subclass are still not aware, at the time of the filing of
this Complaint, of Defendant's false discount advertising scheme. By Defendant's design, the false
advertising scheme by its very nature is hidden and difficult for the typical consumer to discover.
Consumers who shop on Defendant's website do not know the true historical prices or sales
histories of the Products that they have viewed and purchased. They do not know that the
discounts offered are false, or that the false discounting practices extend to all of Defendant's
Products. Subclass members have not discovered, and could not have reasonably discovered,
Defendant's fake discounting scheme.

349.    Absent class members will learn of the scheme for the very first time upon court-ordered class notice in this case.

## COUNT VIII
(Violation of California's False Advertising Law: Bus. & Prof. Code §§ 17500 *et. seq.*)
(By Plaintiffs Gurney, Lashbrook, Khan, Merritt, Davis, Jones, Basham, and the Nationwide Class)

350.    Plaintiffs incorporate each and every factual allegation set forth above.

351.    Plaintiffs bring this cause of action on behalf of themselves and members of the Nationwide Class.

352.    Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

353.    As alleged more fully above, Defendant advertises former prices on its website along with discounts. Defendant does this, for example, by crossing out a higher price (e.g., $23.90) or displaying a regular price next to the discount price. Defendant also does this by publishing a purported regular price (e.g., $23.90), and stating that a discount will be provided during the sale (e.g., "20%," or publishing a "Discount" with a specific discount amount).

354.    The prices advertised as former prices by Defendant were not the true former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products were untrue and misleading.

355.    In addition, Defendant's former price advertisements did not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements did not indicate whether or when the purported former prices were offered at all.

356.    As a result, Defendant violated, and continues to violate, sections 17500 and 17501 to induce Plaintiffs and the subclass to make purchases on its website based on the advertised former prices.

357.    Defendant's misrepresentations were intended to induce reliance, and, as specifically identified above, Plaintiffs saw, read, and reasonably relied on the statements when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

358.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Hot Topic Products.

359.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Nationwide Class.

360.    Plaintiffs and the Nationwide Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Hot Topic Products if they had known the truth, and/or (b) they overpaid for the Products because the Hot Topic Products were sold at a price premium due to the misrepresentation.

**COUNT IX**
(Violation of California's Unfair Competition Law – Bus. & Prof. Code §§ 17200 *et seq.*)
(By Plaintiffs Gurney, Lashbrook, Khan, Merritt, Davis, Jones, Basham, and the Nationwide Class)

361.    Plaintiffs incorporate each and every factual allegation set forth above.

362.    Plaintiffs bring this cause of action on behalf of themselves and members of the Nationwide Class.

363.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

364.    Defendant engaged in unlawful conduct by violating the FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the

dissemination of false advertisements. 15 U.S.C. § 45(a)(1). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 CFR § 233.1, § 233.2.

### The Deceptive Prong

365.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

366.    Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

367.    Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

### The Unfair Prong

368.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that customers were receiving discounts.

369.    Defendant violated established public policy by violating the FAL and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the FAL).

370.    The harm to Plaintiffs and the Nationwide Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injures healthy competition and harms consumers.

371.    Plaintiffs and the Nationwide Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

372.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

373.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Hot Topic Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decisions.

374.    In addition, Class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Hot Topic Products.

375.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and Nationwide Class members.

376.    Plaintiffs and the Nationwide Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Hot Topic Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

### COUNT X
(Breach of Contract)
(By Plaintiffs Gurney, Lashbrook, Khan, Merritt, Davis, Jones, Basham, and the Nationwide Class)

377.    Plaintiffs incorporate each and every factual allegation set forth above.

378.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Gurney brings this cause of action on behalf of herself and the Maryland Subclass, Plaintiff Lashbrook brings this cause of action on behalf of herself and the Michigan Subclass, Plaintiff Davis brings this cause of action on behalf of himself and the Texas Subclass, Plaintiff Basham brings this cause of action on behalf of herself and the Utah Subclass, Plaintiff Jones brings this cause of action on behalf of herself and the Virginia Subclass, Plaintiff Khan brings this

cause of action on behalf of herself and the New York Subclass, and Plaintiff Merritt brings this cause of action on behalf of herself and the South Carolina Subclass.

379.    Plaintiffs and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

380.    The contracts provided that Plaintiffs and class members would pay Defendant for the Products ordered.

381.    The contracts further required that Defendant provides Plaintiffs and class members with Products that have a former price, and a market value, equal to the regular prices displayed on the websites. They also required that Defendant provides Plaintiffs and class members with the specific discount advertised on the website. These were specific and material terms of the contracts.

382.    Plaintiffs and class members paid Defendant for the Products they ordered and satisfied all other conditions of their contracts.

383.    Defendant breached the contracts with Plaintiffs and class members by failing to provide Products that had a regular price and market value equal to the list price displayed on its website, and by failing to provide the promised discounts.

384.    As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

## COUNT XI
### (Breach of Express Warranty)
(By Plaintiffs Gurney, Lashbrook, Khan, Merritt, Davis, Jones, Basham, and the Nationwide Class)

385.    Plaintiffs incorporate each and every factual allegation set forth above.

386.    Plaintiffs bring this cause of action on behalf of themselves and the Class. In the alternative, Plaintiff Gurney brings this cause of action on behalf of herself and the Maryland Subclass, Plaintiff Lashbrook brings this cause of action on behalf of herself and the Michigan Subclass, Plaintiff

Davis brings this cause of action on behalf of himself and the Texas Subclass, Plaintiff Basham brings this cause of action on behalf of herself and the Utah Subclass, Plaintiff Jones brings this cause of action on behalf of herself and the Virginia Subclass, Plaintiff Khan brings this cause of action on behalf of herself and the New York Subclass, and Plaintiff Merritt brings this cause of action on behalf of herself and the South Carolina Subclass.

387.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

388.    Defendant also issued material, written warranties by representing that the Products were being sold at an advertised discounted price. This was an affirmation of fact about the Products and a promise relating to the goods.

389.    These warranties were part of the basis of the bargain and Plaintiffs and members of the class relied on this warranty.

390.    In fact, the Products did not have a market value equal to the purported regular prices. And the Products were not actually sold at the advertised discounts. Thus, the warranties were breached.

391.    Plaintiffs and the Nationwide Class and/or each of the sub-classes were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

## **PRAYER FOR RELIEF**

Plaintiffs seek the following relief for themselves and the proposed class:

a.  An order certifying the asserted claims, or issues raised, as a class action;

b.  A judgment in favor of Plaintiffs and the proposed class;

c.  Damages, statutory damages, treble damages, and punitive damages where applicable;

d.  Restitution;

e.  Rescission;

f.  Disgorgement, and other just equitable relief;

g.  Pre- and post-judgment interest;

h.  An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

i.  Reasonable attorneys' fees and costs, as allowed by law;

j.  Any additional relief that the Court deems reasonable and just.

Respectfully submitted,

Z LAW, LLC

Dated: October 30, 2024

/s/Cory L. Zajdel
Cory L. Zajdel, Esq. (CPF #0412150442)
David M. Trojanowski, Esq. (CPF #1412180233)
Jeffrey C. Toppe, Esq. (CPF #1412180230)
2345 York Road, Suite B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com
jct@zlawmaryland.com
dmt@zlawmaryland.com

*Attorneys for Named Plaintiffs*