**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| DANIELLE GURNEY, *et al.*, on behalf of herself and all others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>HOT TOPIC, INC.,<br><br>               Defendant. | Case No.:  1:25-cv-00318-JRR |

**DEFENDANT HOT TOPIC, INC.'S MEMORANDUM OF**
**POINTS AND AUTHORITIES**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  FACTUAL BACKGROUND ................................................................................. 3

III.  LEGAL STANDARDS ....................................................................................... 5

IV.  ARGUMENT ..................................................................................................... 7

    A.  Plaintiffs Allege No Facts Demonstrating that the Reference Prices on the Items They Purchased Were False or Deceptive. ........................................ 7

    B.  Plaintiffs Cannot State a Claim Under the Laws Where They Reside.................................................................................................................. 11

        1.  Plaintiffs Fail to Allege Cognizable Injury to Support Their State Consumer Fraud Claims. ............................................................. 11

            a.  The fact that Plaintiffs purchased each an item is not, in itself, an injury. ........................................................................ 12

            b.  Plaintiffs' claims that their purchases were not "worth" their reference prices says nothing as to whether plaintiffs received the benefit of their bargain............................................................... 14

            c.  Plaintiffs' fraud-on-the-market theory fails because plaintiffs do not claim to have paid more than the items are worth. ....................... 16

    C.  Plaintiffs' Subclass Statute claims fail for numerous other reasons. ................... 16

        1.  Plaintiffs' Michigan and Virginia Claims should also be dismissed for failure to identify the products at issue............................. 16

        2.  Khan cannot invoke the New York GBL because she was not allegedly injured in New York............................................................. 17

        3.  Jones' VCPA claim is time-barred. ......................................................... 18

        4.  Merritt's SCUTPA claim is time-barred and cannot proceed on a class basis. ......................................................................................... 18

        5.  The Economic Loss Rule bars Plaintiffs' Texas, New York, Michigan, and Maryland claims. ............................................................ 19

    D.  The Court Should Dismiss Plaintiffs' California Claims. ..................................... 19

i

1.      California's presumption against extraterritoriality prevents
        UCL and FAL claims from applying to out-of-state
        consumers like Plaintiffs with no ties to California................................. 19

2.      The UCL also does not apply, as a matter of California law,
        because other states have a greater interest in purchases
        within their borders. .................................................................. 21

3.      Even Under a Choice-Of-Law Analysis, California Law
        Does Not Apply ........................................................................ 22

E.      Plaintiffs' Breach-of-Contract and Breach-of-Express-Warranty
        Claims Fail for Numerous Reasons ....................................................... 23

1.      Plaintiffs fail to identify the applicable law. ............................................. 23

2.      Plaintiffs' breach-of-contract and breach-of-express-
        warranty claims should be dismissed for failure to give
        required pre-suit notice of the breach. ...................................................... 24

F.      The Court Should Dismiss or Strike Plaintiffs' Prayers for
        Equitable Relief ........................................................................... 25

1.      Plaintiffs lack Article III standing to seek injunctive relief. .................... 25

2.      Plaintiffs' claims for equitable relief are barred as a matter
        of law because they have not adequately pled that they lack
        an adequate remedy at law. ....................................................................... 28

V.      CONCLUSION.......................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahringer v. LoanDepot, Inc.*,
   715 F. Supp. 3d 1274 (C.D. Cal. 2024) ..................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................5

*Augustine v. Talking Rain Beverage Co., Inc.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019) ..................................................................23

*Azimpour v. Sears, Roebuck & Co.*,
   No. 15-CV-2798 JLS (WVG), 2016 WL 7626188 (S.D. Cal, Oct. 17, 2016)........10

*Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*,
   388 F. Supp. 3d 574 (D. Md. 2019), as amended (June 17, 2019) .........................22

*Beiersdorfer v. Larose*,
   No. 20-3557, 2021 WL 3702211 (6th Cir. Aug. 20, 2021) ....................................26

*Belcastro v. Burberry Ltd.*,
   No. 16-CV-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017)...................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................5

*Ben-Joseph v. Mt. Airy Auto Transporters, LLC*,
   529 F. Supp. 2d 605 (D. Md. 2008).......................................................................22

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) .................................................................................13

*Berni v. Barilla S.P.A.*,
   964 F.3d 141 (2d Cir. 2020)...................................................................................27

*Bioriginal Food and Science Corp. v. Biotab Nutraceuticals Inc.*,
   No. CV13-5704 CAS (Ex), 2013 WL 6572573 (C.D. Cal. Dec. 13, 2012) .............6

*Bohr v. Tillamook County Creamery Ass'n*,
   321 Or. App. 213 (2022)........................................................................................16

*Brazil v. Dole Food Co., Inc.*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) .....................................................................6

*Brown v. Starbucks Corp.*,
    18CV2286-JM-WVG, 2019 WL 4183936 (S.D. Cal. Sept. 3, 2019) ....................................23

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ......................................................................................8, 27

*Carney v. Adams*,
    592 U.S. 53 (2020)..............................................................................................................26

*Cath. Soc. of Religious & Literary Educ. v. Madison Cnty.*,
    74 F.2d 848 (4th Cir. 1935) .............................................................................................28

*Chairman of Bd. Of Trustees of Emp. Ret. Sys. V. Waldron*,
    285 Md. 175, 401 A.2d 172 (1979) ...............................................................................20

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
    169 F. Supp. 2d 1119 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C.*
    *v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...............................................................20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................................25

*Connick v. Suzuki Motor Co., Ltd.*,
    174 Ill.2d 482 (1996) ........................................................................................................24

*Conrad v. Boiron, Inc.*,
    869 F.3d 536 (7th Cir. 2017) ...........................................................................................27

*Cook v. USAA Fed. Sav. Bank*,
    No. 8:22-CV-01469-PX, 2024 WL 4201410 (D. Md. Sept. 16, 2024) ..................................19

*Cozzarelli v. Inspire Pharms. Inc.*,
    549 F.3d 618 (4th Cir. 2008) .............................................................................................7

*Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*,
    790 F. App'x 775 (6th Cir. 2019).....................................................................................19

*DaCorta v. AM Retail Grp., Inc.*,
    No. 16-CV-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan 23, 2018)...............................14

*Davison v. Kia Motors Am., Inc.*,
    No. SACV15-00239-CJC (RNBx), 2015 WL 3970502 (C.D. Cal. June 29,
    2015) ....................................................................................................................................21

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
    383 S.C. 115 (2009) ..........................................................................................................18

*Dennis v. Ralph Lauren Corp.*,
No. 16cv1056-WQH-BGS, 2016 WL 7387356 (S.D. Cal. Dec. 20, 2016) ............................11

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006) ..................................................................................................26

*Everett v. TK–Taito, L.L.C.*,
178 S.W.3d 844 (Tex. App. 2005).................................................................................................15

*Fejzulai v. Sam's West, Inc.*,
205 F. Supp. 3d 723 (D. S.C. 2016)...............................................................................................18

*Fisher v. Eddie Bauer LLC*,
No. 19cv857 JM (WVG), 2019 WL 9467922 (S.D. Cal. Oct. 18, 2019) .................................9

*Franklin v. Gwinnett Cty. Pub. Sch.*,
503 U.S. 60 (1992)............................................................................................................................28

*Fravel v. Ford Motor Co.*,
973 F. Supp. 2d 651 (W.D. Va. 2013 ) .........................................................................................6

*Gerboc v. ContextLogic, Inc.*,
867 F.3d 675 (6th Cir. 2017) ........................................................................................................15

*Gibson v. Jaguar Land Rover N. Am., LLC*,
No. CV20-00769-CJC (GJSx), 2020 WL 5492990 (C.D. Cal. Sep. 9, 2020) .........................29

*Gonzalez v. Am. Honda Motor Co.*,
720 F. Supp. 3d 833 (C.D. Cal. 2024) .........................................................................................18

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (2002) ......................................................................................................................17

*Hageman v. Hyundai Motor Am.*,
No. SACV23-01045-CJC (KESx), 2024 WL 694378 (C.D. Cal. Jan. 5, 2024).....................21

*Haley v. Corcoran*,
659 F. Supp.2d 714 (D.Md.2009) ...................................................................................................6

*Harris v. Sand Canyon Corp.*,
274 F.R.D. 556 (D.S.C. 2010) ........................................................................................................18

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ................................................................................................6, 7, 8, 17

*Helwig v. Suburban Chevrolet, Inc.*,
No. R-83-720, 1983 WL 539 (D. Md. Aug. 11, 1983) ..........................................................25

*Hennessey v. Gap, Inc.*,
   86 F.4th 823 (8th Cir. 2023) ..................................................................................13

*Henrietta Mills v. Rutherford Cnty., N.C.*,
   32 F.2d 570 (4th Cir. 1929), *aff'd*, 281 U.S. 121 (1930). Case ...............................28

*Horn v. Med. Marijuana, Inc*.,
   383 F. Supp. 3d 114 (W.D.N.Y. 2019), *modified on reconsideration*, No. 15-
   CV-701-FPG, 2019 WL 11287650 (W.D.N.Y. Nov. 22, 2019).................................17

*Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*,
   209 Mich. App. 365 (1995) .....................................................................................19

*HRL Land or Sea Yachts v. Travel Supreme, Inc.*,
   No. 07–cv–945, 2009 WL 427375 (W.D. Mich. Feb. 20, 2009)................................6

*In re Apple Processor Litig.*,
   No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ....................................29

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.*
   *Litig.*, 903 F.3d 278 (3d Cir. 2018) ........................................................................27

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...................29

*In re McDonald's French Fries Litig*.,
   257 F.R.D. 669 (N.D. Ill. 2009)...............................................................................24

*In re TD Bank, N.A.*, *Debit Card Overdraft Fee Litig.*,
   150 F. Supp. 3d 593 (D.S.C. 2015)..........................................................................18

*In re Toyota Motor Corp*.,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) .....................................................................20

*In re VTech Data Breach Litig*.,
   Nos. 15 CV 10889, 15 CV 10891, 15 CV 11620, 15 CV 11885, 2018 WL
   1863953 (N.D. Ill. Apr. 18, 2018) ...........................................................................23

*Izquierdo v. Mondelez Int'l, Inc.*,
   No. 16-cv-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)....................14

*Johnson v. Jos. A. Bank Clothiers, Inc.*,
   No. 2:13-cv-756, 2014 WL 64318 (S.D. Ohio Aug. 19, 2014) ...............................13

*Johnson v. Wheeler*,
   492 F. Supp.2d 492 (D.Md. 2007).............................................................................6

*Jones v. Koons Auto., Inc.*,
　752 F. Supp. 2d 670 (D. Md. 2010) ....................................................13

*Jones v. Prince George's Cnty., Md.*,
　355 F. App'x 724 (4th Cir. 2009) ......................................................22

*Kalimantano GmbH v. Motion in Time, Inc.*,
　939 F.Supp.2d 392 (S.D.N.Y 2013).....................................................19

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) .............................................................6

*Kim v. Carter's Inc.*,
　598 F.3d 362 (7th Cir. 2010) ..............................................................15

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
　313 U.S. 487 (1941)............................................................................22

*Lab. Corp. of Am. v. Hood*,
　395 Md. 608, 911 A.2d 841 (2006) .....................................................22

*Lamar Homes, Inc. v. Mid–Continent Cas. Co.*,
　242 S.W.3d 1 (Tex. 2007)...................................................................19

*Lane v. Wells Fargo Bank, N.A.*,
　No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. Jun. 21, 2013) ...................................24

*Lanovaz v. Twinings N. Am., Inc.*,
　726 F. App'x 590 (9th Cir. 2018) ......................................................26

*Leigh-Pink v. Rio Props., LLC*,
　138 Nev. 530 (2022) ..........................................................................13

*Leigh-Pink v. Rio Props., LLC*,
　512 P.3d 322 (2022)............................................................................15

*Lisner v. SPARC Grp. LLC*,
　No. 2:21-cv-05713-AB (GJSx), 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) .......................9

*Los Angeles v. Lyons*,
　461 U.S. 95 (1983)..............................................................................26

*Lujan v. Defenders of Wildlife*,
　504 U.S. 563 (1992)......................................................................26, 27

*Mahfood v. QVC, Inc.*,
　No. SACV06-0659 AG (ANx), 2007 WL 9363986 (C.D. Cal. Feb. 7, 2007) .......................10

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ...................................................................21

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
   710 F.3d 551 (4th Cir. 2013) ....................................................................7

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) .....................................................................16

*McNair v. Synapse Group, Inc.*,
   672 F.3d 213 (3d Cir. 2012) .....................................................................27

*Metague v. Woodbolt Distribution, LLC*,
   No. 8:20-cv-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021) .....................................27

*Murphy v. Capella Educ. Co.*,
   589 F. App'x 646 (4th Cir. 2014) ...............................................................7

*Nathan v. Whirlpool Corp.*,
   492 F. Supp. 3d 747 (S.D. Ohio 2020) .........................................................24

*Neibarger v. Universal Coops., Inc.*,
   439 Mich. 512, 486 N.W.2d 612 (1992) ........................................................19

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App.4th 214 (1999) ...............................................................19, 20

*Nunez v. Best Buy Co.*,
   315 F.R.D. 245 (D. Minn. 2016) ................................................................10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .........................................................................25, 29

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ....................................................................21

*Patel v. Holiday Hospitality Franchising, Inc.*,
   172 F. Supp.2d 821 (N.D.Tex. 2001) ...........................................................6

*Philips v. Ford Motor Co.*,
   726 F. App'x 608 (9th Cir. 2018) ...............................................................29

*Philips v. Pitt Cnty. Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ....................................................................5

*Prescott v. Reckitt Benckiser LLC*,
   No. 19-cv-6147 (JGK), 2020 WL 7075624 (N.D. Cal. Dec. 3, 2020) ........................................6

*Rael v. Dooney & Bourke, Inc.*,
  No. 16-cv-369-BAS (JMA), 2016 WL 3952219 (S.D. Cal. July 22, 2016) ......................9, 11

*Rael v. New York & Co., Inc.*,
  2016 WL 7655247 (S.D. Cal. Dec. 28, 2016) .........................................................................10

*Robey v. PVH Corp.*,
  495 F. Supp. 3d 311 (S.D.N.Y. 2020) .....................................................................................9

*Robey v. SPARC Grp. LLC*,
  256 N.J. 541, 311 A.3d 463 (2024) .................................................................................13, 15

*Rondeau v. Mosinee Paper Corp.*,
  422 U.S. 49 (1975) ..................................................................................................................29

*Ross v. Tenn. Com. Warehouse, Inc.*,
  No. 3:14-cv-00391-FDW-DCK, 2014 WL 4672424 (W.D.N.C. Sept. 18,
  2014) ........................................................................................................................................25

*Sandberg v. McDonald*,
  248 U.S. 185, 39 S. Ct. 84, 63 L.Ed. 200 (1918) ...................................................................20

*Schertzer v. Samsonite Co. Stores, LLC*,
  No. 19-CV-639 JLS (MSB), 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ...........................10

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ..................................................................................................17

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017) .......................................................................................................13

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..................................................................................................29

*Sperling v. DSWC, Inc.*,
  699 F. App'x 654 (9th Cir. 2017) ...............................................................................................8

*Sperling v. DSW, Inc.*,
  No. EDCV151366JGBSPX, 2016 WL 354319 (C.D. Cal. Jan. 28, 2016), *aff'd
  sub nom. Sperling v. DSWC, Inc.* ..............................................................................................8

*Strum v. Exxon Co., U.S.A.*,
  15 F.3d 327 (4th Cir. 1994) .......................................................................................................6

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) .....................................................................................................19, 20

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)...........................................................................25, 26

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    308 F.R.D. 630 (N.D. Cal. 2015)...............................................................24

*Teachers' Ret. Sys. Of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) .......................................................................6

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
    290 F.3d 1301 (11th Cir. 2002) ...................................................................7

*U.S. ex rel. Godfrey v. KBR, Inc.*,
    360 F. App'x 407 (4th Cir. 2010) ................................................................8

*U.S. ex rel. Grant v. United Airlines, Inc.*,
    No. 2:15-cv-794, 2016 WL 6823321 (D.S.C. Nov. 18, 2016)....................6

*U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ...........................................................6, 7, 17

*U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*,
    42 F.4th 185 (4th Cir. 2022) .......................................................................6

*U.S. ex rel. Taylor v. Boyko*,
    39 F.4th 177 (4th Cir. 2022) .......................................................................7

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
    336 F.3d 375 (5th Cir. 2003) .......................................................................7

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ...............................................................6, 7, 8

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
    386 F.3d 581 (4th Cir. 2004) .....................................................................22

*Washington Mut. Bank, FA v. Superior Ct.*,
    24 Cal. 4th 906, 15 P.3d 1071 (2001).......................................................21

*Younger v. Harris*,
    401 U.S. 37 (1971).....................................................................................28

**Statutes**

California False Advertising Law, Cal. Bus.& Prof. Code §17500, *et seq.* .......................... passim

California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ...................... passim

Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.* ............ passim

Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* ............... passim

New York Consumer Protection Act, N.Y. Gen. Bus. Law § 349, *et seq.* ........................... passim

South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* .................. passim

Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com.
    Code § 17.41, *et seq.* ....................................................................................... passim

Uniform Commercial Code ............................................................................................ passim

Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-1, *et seq.* ................................... passim

Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.* .............................. passim

**Other Authorities**

*Wright & Miller*, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ......................................29

Fed. R. Civ. P. 8 .......................................................................................................... passim

Fed. R. Civ. P. 9(b) ...................................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 6, 7

Fed. R. Civ. P. 12(f) .................................................................................................1, 25

Defendant Hot Topic, Inc. (hereinafter "Defendant" or "Hot Topic") respectfully moves for dismissal of Plaintiffs' Class Action complaint, pursuant to FRCP 8, 9(b), 12(b)(6), and 12(f), and states as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Over the last decade, well over 300 lawsuits have been filed across the country based on the same theory that Plaintiffs allege here: that a defendant perpetually offered items at a discount, so customers did not get as good a "deal" as they hoped.  These cases have regularly failed to survive the pleadings stage for two reasons, both applicable here.

First, a plaintiff cannot state a claim for "fake sales" without alleging facts to suggest that the price was actually false or misleading.  Here, Plaintiffs repeat, many times over, that Hot Topic never offers products at their higher reference prices, but this allegation is based on nothing but the fact that each plaintiff bought an item on sale.  However, the mere existence of a sale does not support the inference that the sale is false.  Plaintiffs' conclusory and unsupported allegations fail to meet Rule 8's plausibility standard, much less Rule 9(b)'s heightened standard, which the Fourth Circuit has repeatedly held requires "prediscovery evidence" of fraud.

Second, Plaintiffs allege no cognizable injury, an indispensable element of the consumer fraud laws of Maryland, Michigan, New York, South Carolina, Texas, Virginia, or Utah (the states where each plaintiff resides).  Here, each Plaintiff received the exact item they wanted, at the exact price they agreed to pay, and they allege no facts suggesting that the items were worth less than the low prices they paid (*e.g.*, $8.99 for a tank top).  As courts across the country have consistently made clear, interpreting statutes similar to those here and based on the same model statute, subjective regret about making a purchase, or failure to receive a windfall in the form of an item "worth" more than the amount actually paid, do not satisfy statutory injury requirements.

Plaintiffs' statutory claims fail for several additional threshold reasons. The South Carolina and Virginia claims are time-barred. No Plaintiff viewed Hot Topic's pricing in New York, made a purchase in New York, or experienced any harm in New York. The South Carolina Unfair Trade Practices Act precludes class actions. And the Michigan and Virgina Plaintiffs fail to even identify what they bought.

Plaintiffs also purport to bring nationwide claims for breach of contract and breach of warranty but do not identify the laws that they claim apply—leaving up for debate whether they are suggesting that the Court apply Maryland, or perhaps California law nationwide, or that the Court should try to manage the laws of all 50 states. Regardless, Plaintiffs failed to provide requisite pre-suit notice (required under the Uniform Commercial Code), or to allege any damage.

Plaintiffs' nationwide California claims, in turn, fail because no Plaintiff viewed Hot Topic's pricing in California, made a purchase in California, or experienced any harm in California. California's consumer protection statutes do not apply where, as here, the plaintiffs' claims have no connection to California.

In the alternative, this Court should dismiss Plaintiffs' claims for equitable relief (restitution, rescission, disgorgement, and injunctive relief). They lack Article III standing to seek injunctive relief because they now purport to understand Hot Topic's pricing, and thus face no risk of being deceived in the future. Moreover, Plaintiffs cannot seek equitable relief because they seek damages for the exact same conduct, and never explain why such damages would not make them whole.

For these reasons and more, as set forth below, the Court should dismiss Plaintiffs' Complaint with prejudice.

## II.    FACTUAL BACKGROUND

Hot Topic is an American retailer specializing in licensed pop-culture "merch," including clothing and accessories, that it sells in its brick-and-mortar stores and on its website, HotTopic.com.  It is headquartered in City of Industry, California.  (Compl. ¶ 22.)

Plaintiffs each allege that they purchased products from HotTopic.com that were offered for less than the higher "regular list prices" or otherwise included in a promotion:

- *Danielle Gurney* (**Maryland**) bought a "My Hero Academia Izuku Midoriya Hoodie" (sweatshirt) for approximately $34.93 in November 2021, after receiving 30% off her purchase (*Id.* ¶¶ 60-61);

- *Rebecca Lashbrook* (**Michigan**) bought three unspecified jewelry items for $25.80 (on average, $8.60 each) in October 2021, as part of a "buy two, get one free" deal (*Id.* ¶¶ 75-76);

- *Husnah Khan* (**New York**), a New York resident *living in Michigan* at the time of purchase (Apr. 2024), paid $14.34 for a "Scream Ghost Face Doll T-Shirt" with a "regular list price" of $23.99 (*Id.* ¶ 66);

- *Natalie Merritt* (**South Carolina**), bought four products for approximately $89.60 (on average, $22.40 each) in March 2019, after receiving 20% off her order (*Id.* ¶ 69);

- *Darius Davis* (**Texas**), bought a "Scream Ghost Face Jumbo Chillin' Shirt" t-shirt for approximately $21.52, discounted from $26.90 (*Id.* ¶¶ 63-64);

- *Shanika Jones* (**Virginia**), bought nine unspecified items for $104.73 (on average, $11.63 each) in January 2020, after receiving 20% off her purchase (*Id.* ¶ 72); and

- **Brittany Basham** (**Utah**), bought a "Rib Cage Split Shark Bite Girls Tank Top" for $8.99 in September 2023 after redeeming a number of discounts and loyalty rewards (*Id.* ¶ 78).

Plaintiffs claim that Hot Topic tricked them into making these purchases by representing that the items regularly sold at, and were therefore worth, the higher reference prices—when in fact, the items are always on sale. This theory, and variations of it, is repeated many times throughout the Complaint, but Plaintiffs allege no facts to support it.  Examples of the boilerplate, repetitive allegations include:

> The representations Plaintiffs relied on, however, were not true.  The purported list prices were not the true regular prices, the purported discounts were not the true discounts, and the discounts were not time-limited. (Compl. ¶ 12.)

> Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts. …  The "list" price is not an accurate reflection of the actual regular or normal price of any given Product, including the Products referenced within this Complaint. (Compl. ¶ 29.)

> [E]verything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are always available for less than that, and customers did not have to formerly pay that amount to get those items.  (Compl. ¶ 33.)

> Defendant's Products are always on sale, and these sales persist indefinitely. As a result, Defendant's listed prices are not Defendant's true prices, or former prices, or the prevailing market prices for Defendant's Products. Nor are its purported price reductions true price reductions.  (Compl. ¶ 59.)

However, Plaintiffs' 82-page, nearly 400-paragraph-long Complaint does not identify a single fact to support their theory that the items they purchased were always on sale, or that Hot Topic's "limited time" sales were not limited in time.  Instead, for each product, the Complaint identifies only a single day that the item was ever offered at a discount:  the date on which a Plaintiff bought it.

Plaintiffs claim that Hot Topic's alleged "fake sales" caused them to make purchases they otherwise would not have made.  Reflexively assuming that an item's ***former*** price reflects its ***current*** value, Plaintiffs also claim that the items they purchased "were not, in fact, worth as much as Defendant represented them to be worth."  (*See, e.g.,* Compl. ¶ 143.)  In short, Plaintiffs' theory is that they expected a windfall (in the form of something worth more than what they paid) and didn't get one.  (*See* Compl. ¶ 31 (alleging that when something is on sale, the consumer is hoping "receive something worth more than [they] pay for it").)  Plaintiffs do not allege the actual value of any item they purchased, nor do they claim that the items were worth less than what they paid. To the contrary, they recognize that Plaintiffs still may have received a good deal in the form of a "little" discount.  (Compl. ¶ 51.)

Plaintiffs purport to bring nationwide claims under California's False Advertising Law ("FAL"), California's Unfair Competition Law ("UCL"), for breach of contract, and for breach of warranty.  They do not specify which state's laws they claim govern their contract and warranty claims.  Each Plaintiff also purports to bring claims on behalf of a subclass of consumers from the states in which they reside, under each state's respective consumer protection laws.

## III.    LEGAL STANDARDS

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists when a plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  The court will not simply accept legal conclusions drawn from the facts, nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiffs also must satisfy the "steep" heightened pleading standard imposed by Rule 9(b). *See* Fed. R. Civ. P. 9(b); *U.S. ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022). Failing to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 n. 5 (4th Cir. 1999). Nearly all of Plaintiffs claims are subject to Rule 9(b).[1]

Plaintiffs cannot "simply cry fraud" to satisfy Rule 9(b). *Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 331 (4th Cir. 1994). That is, plaintiffs cannot state a fraud claim by merely asserting that a statement is misleading; instead, they must allege "sufficient facts … to support a reasonable belief that the statements were in fact misleading." *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 175 (4th Cir. 2007). Thus, where a fraud claim "rest[s] primarily on facts [to be] learned through the costly process of discovery," dismissal is appropriate. *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008)); *see also Harrison,* 176 F.3d at 789 (requiring "substantial prediscovery evidence"); *Nicholson*, 42 F.4th at 196 (Rule 9's standard is "steep"). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud."

---

[1] *See, e.g., Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 & n. 10 (D. Md. 2009) (**Maryland Consumer Protection Act**); *Johnson v. Wheeler*, 492 F. Supp.2d 492, 509 (D. Md. 2007) (same); *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, No. 07–cv–945, 2009 WL 427375 at *8 (W.D. Mich. Feb. 20, 2009) (**Michigan Consumer Protection Act**); *U.S. ex rel. Grant v. United Airlines, Inc.*, No. 2:15-cv-794, 2016 WL 6823321, at *6 (D.S.C. Nov. 18, 2016) (**South Carolina Unfair Trade Practices Act**); *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F. Supp.2d 821, 824–25 (N.D. Tex. 2001) (and cases cited therein) (**Texas Deceptive Trade Practices Consumer Protection Act**); *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013 ) (**Virginia Consumer Protection Act**); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (**California Unfair Competition Law**); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (**California False Advertising Law**); *Bioriginal Food and Science Corp. v. Biotab Nutraceuticals Inc.*, No. CV13-5704 CAS (Ex), 2013 WL 6572573, at *3 (C.D. Cal. Dec. 13, 2013) (finding that Rule 9(b) applies where a claim sounds in fraud, and that a claim sounds in fraud "where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim"); *Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2020 WL 7075624, at *4 (N.D. Cal. Dec. 3, 2020) (**breach of contract**: "[W]here a quasi-contract claim is based on the same allegedly misleading advertising giving rise to [a] UCL [] claim[], the quasi-contract claim also sounds in fraud and is subject to Rule 9(b)'s heightened pleading standards.") (citations omitted).

*Wilson*, 525 F.3d at 379 (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc*., 336 F.3d 375, 384 (5th Cir. 2003)) (internal citations omitted).

Rule 9 serves several policy objectives: "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *McCauley v. Home Loan Inv. Bank,* 710 F.3d 551, 559 (4th Cir. 2013); *Harrison*, 176 F.3d at 784–89 (citation omitted). Failing to meet Rule 9(b)'s particularity standard is treated in this circuit as a failure to state a claim under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022).

## IV.    ARGUMENT

### A.    Plaintiffs Allege No Facts Demonstrating that the Reference Prices on the Items They Purchased Were False or Deceptive.

Plaintiffs' claims fail under Rules 8 and 9(b) because they do not allege a single fact to suggest that the reference prices on the products they purchased were false or misleading.

If "Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion." *Nathan*, 707 F.3d at 457 (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002)). The Fourth Circuit has consistently affirmed the dismissal of fraud-based claims for failing to satisfy this standard, even when complaints demonstrate a thorough investigation into the challenged conduct (something wholly absent here). In *Cozzarelli v. Inspire Pharms. Inc*., for example, the court required factual support to "protect[] defendants from the reputational harm that results from frivolous allegations of fraudulent conduct." 549 F.3d 618, 629 (4th Cir. 2008); *see also Murphy v. Capella Educ. Co.*, 589 F. App'x 646 (4th Cir. 2014); *Taylor,* 39 F.4th at 196. And in *Wilson*, the Fourth Circuit affirmed the lower court's dismissal where the complaint

contained "[no] specific facts about several important elements of the alleged scheme." *Wilson*, 525 F.3d at 379; *see also U.S. ex rel. Godfrey v. KBR, Inc*., 360 F. App'x 407, 411 (4th Cir. 2010) (no facts suggesting intent to defraud); *Harrison*, 176 F.3d at 790 (no facts to suggest sole-sourcing was fraudulent).

Here, Plaintiffs identify no facts suggesting that the items they bought are always on sale. "[T]he fact [of] frequent sales of various items does not support an inference that those sales were fraudulent or deceptive." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014). Even in cases where the plaintiffs alleged detailed investigations, such as factual evidence of the same items being sold elsewhere for less, courts have dismissed pricing claims at the pleadings stage.

For example, in *Sperling v. DSWC, Inc.*, the plaintiff asserted that the defendant's "Compare At" reference prices were deceptive because they did not accurately reflect competitors' prices. 699 F. App'x 654 at 655 (9th Cir. 2017). Unlike Plaintiffs here, the plaintiff in *Sperling* claimed to have investigated the shoes that she purchased, "found [them] elsewhere" for less than the reference price she relied on, and cited specific prices charged by other retailers for that item. *Id*. Despite these allegations, the district court found, and the Ninth Circuit later agreed, that the plaintiff failed to satisfy Rule 9(b) because the complaint was missing critically important facts about her counsel's alleged investigation, such as *when* it took place. Without these details, plaintiff's allegations did not adequately substantiate her claim that the pricing was deceptive. *Id*.; *see also Sperling v. DSW Inc*., No. EDCV151366JGBSPX, 2016 WL 354319, at *7 (C.D. Cal. Jan. 28, 2016), *aff'd sub nom. Sperling v. DSWC, Inc*., 699 F. App'x 654 (9th Cir. 2017) ("In short, Plaintiff's conclusory allegations regarding her efforts to investigate the prices of the shoes do not

make clear that Defendants' comparative reference prices were deceptive and did not reflect market prices at the time they were listed.").

Similarly, in *Rael v. Dooney & Bourke, Inc*., No. 19-cv-6147 (JGK), 2016 WL 3952219, at *3 (S.D. Cal. July 22, 2016), the plaintiff alleged an "extensive investigation of sales and discount pricing advertisements at retail stores throughout…California."  The court, however, refused to trust the plaintiffs' assurances that the alleged investigation supported the plaintiff's "fake sale" claims:

> Did he visit any [of defendant's] retail or outlet stores? Did he visit the [defendant's] website, and if so, on which dates? Which products, if any, are discounted beyond the 90-day period? Did he attempt to search for the [product] purchased by Plaintiff to determine if its pricing was false and if so, on what basis?

*Id.* at *3.

Countless other examples abound.  For example:

- *Robey v. PVH Corp*., 495 F. Supp. 3d 311, 323 (S.D.N.Y. 2020) ("While the plaintiff claims to have conducted an 'investigation,' the plaintiff has failed to allege with specificity that the investigation was sufficient to establish that the price cited was a 'fictitious former price'");

- *Lisner v. SPARC Grp. LLC*, No. 2:21-cv-05713-AB (GJSx), 2021 WL 6284158, at *6 (C.D. Cal. Dec. 29, 2021) (dismissing pricing claims for "failure to allege the pricing information for the items Plaintiffs purchased" and/or to investigate at retail stores located in California, despite alleged online investigation into thousands of items);

- *Fisher v. Eddie Bauer LLC*, No. 19cv857 JM (WVG), 2019 WL 9467922, at *5 (S.D. Cal. Oct. 18, 2019) ("The fact that two products remained on sale for at least 90 days does not provide sufficient support for his allegation of a fraudulent pricing

scheme involving almost all of the merchandise...");

- *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639 JLS (MSB), 2020 WL 4281990, at *5 (S.D. Cal. Feb. 25, 2020) ("Plaintiff does not allege in this case that her counsel's investigation revealed that the very Suitcase she purchased had not been sold at the 'OUR PRICE' price in the 90 days preceding her purchase.");

- *Rael v. New York & Co., Inc.*, No. 16-cv-369-BAS (JMA), 2016 WL 7655247, at *7 (S.D. Cal. Dec. 28, 2016) (plaintiff "does not specify a single detail of his alleged investigation.");

- *Mahfood v. QVC, Inc.*, No. SACV06-0659 AG (ANx), 2007 WL 9363986, at *4 (C.D. Cal. Feb. 7, 2007) (plaintiff's allegations did not "state with specificity any facts relating to the alleged misrepresentation of the actual retail market prices of the items").

In several cases, courts have even held that a third-party's years-long investigation and report showing systematic sales were insufficient to suggest the items plaintiffs purchased were perpetually on sale. *Nunez v. Best Buy Co.*, 315 F.R.D. 245, 250 (D. Minn. 2016) ("the CSS Study lends little—if any—support to the allegation that $199.99 was not the true 'regular' price of the microwave Nunez purchased, because it simply does not address that product."); *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG),  2016 WL 7626188, *7 (S.D. Cal. Oct. 17, 2016) ("[T]he CSS Study cited by Plaintiff does not appear to contain data on the particular pillow purchased by Plaintiff, … [and thus] does not substantiate Plaintiff's claims as to his pillow.").

And even if Plaintiffs' conclusory allegations as to Hot Topic's website were sufficient to suggest that products on the website are always on sale (which they are not), they still cannot establish that the reference prices are deceptive without considering Hot Topic's primary sales

channel: its brick-and-mortar stores.  Courts have consistently dismissed pricing lawsuits where the plaintiffs investigated only one of the multiple channels that sold the products at issue.  *See e.g., Dennis v. Ralph Lauren Corp*., No. 16cv1056-WQH-BGS, 2016 WL 7387356, at *4 (S.D. Cal. Dec. 20, 2016) (granting motion to dismiss when plaintiff did not allege the item "was unavailable at the $74.99 price at other locations offering Ralph Lauren products, such as the 'Polo retail store[s], high-end department stores, and related online stores.'"); *Dooney & Bourke, Inc*., 2016 WL 3952219, at *3 (no investigation into mainline stores or website).

Plaintiffs' allegations are even more inadequate than any of the cases above, and should be dismissed for the same reasons.

### B.    Plaintiffs Cannot State a Claim Under the Laws Where They Reside.

Plaintiffs each purport to represent a subclass of consumers from the states where they reside (Maryland, Michigan, New York, South Carolina, Texas, Utah, and Virginia), and to bring a single cause of action under the states' respective consumer protection laws (together, the "Subclass Statutes").  Each of these claims fail for numerous reasons.

#### 1.    *Plaintiffs Fail to Allege Cognizable Injury to Support Their State Consumer Fraud Claims.*

The Subclass Statutes, like those of nearly every other state, bar consumers from suing unless they can plead and prove sufficient injury.[2]  No injury, no private right of action.

---

[2] Md. Code Ann., Com. Law § 13-408 ("any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title"); Mich. Comp. Laws § 445.911(2) (private right of action for "a person who suffers loss as a result of a violation of this act"); N.Y. Gen. Bus. Law § 349 (private right of action for "any person who has been injured by reason of any violation of this section"); S.C. Code Ann. § 39-5-140(a) (private right of action "to recover actual damages" for "person who suffers any ascertainable loss of money or property" as a result of the prohibited practice); Tex. Bus. & Com. Code §17.50(a) (private right of action for consumers who suffer "economic damages or damages for mental anguish" caused by challenged conduct); *id.* § 17.45(11) ("Economic damages" are defined as "compensatory damages for pecuniary loss, including costs of repair and replacement."); Utah Code Ann. § 13-11-19(2) (private right of actions for "[a] consumer who suffers loss as a result of a violation of this chapter"); Va. Code Ann. § 59.1-204 (same).

Here, Plaintiffs cannot satisfy this requirement, because they do not allege any objective injury—i.e., that the claimed violation left them worse off.  Instead, Hot Topic offered each item for a given price, and Plaintiffs decided the items were worth that price, as evidenced by their decisions to purchase the items.  Plaintiffs do not contend that the products they received were defective or in any way different from what they ordered.  Plaintiffs do not even claim that the products they received were worth less than what they actually paid.  Plaintiffs' only gripe is an immeasurable, subjective one: disappointment that they didn't get as good of a deal as they'd hoped.  This theory fails as a matter of law because it does not amount to an objective, measurable injury to business or property.  Customers who receive exactly what they ordered at exactly the price they agreed to pay suffer no injury.

Plaintiffs cannot plead around this tenet of consumer litigation.  Plaintiffs fail to identify any way in which Hot Topic's alleged violation made them worse off—for example, an objective deviation between what they were promised and what they received.  Law, language, and common sense all dictate that receiving exactly what you order at the price you agree to pay is not an injury, regardless of any subjective buyer's regret.

### a. The fact that Plaintiffs purchased each an item is not, in itself, an injury.

Plaintiffs' claim that they would not have made their purchases absent Hot Topic's advertised discounts (*see, e.g*., Compl. ¶¶ 12, 54) does not equate to sufficient injury to confer statutory standing to bring their state law claims.

As stated above, each of the Subclass Statutes requires Plaintiffs to plead causation and injury as separate elements of a claim.  Plaintiffs' theory effectively eliminates each statute's injury element by presuming an injury whenever a consumer alleges that she would not have made a purchase without the occurrence of an unlawful trade practice.  In doing so, Plaintiffs wrongly

"merge[] the alleged deception with the injury." *Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670 (D. Md. 2010) (insufficient for plaintiff to allege she "would not have" bought the challenged item, absent some separate injury).

Outside of the Ninth Circuit, every federal court in the country to consider this theory in the pricing context has rejected it. For instance, in *Shaulis v. Nordstrom, Inc.*, the First Circuit concluded that the plaintiff's allegation that she would not have made the purchase but-for the allegedly false reference price "is simply another way of saying that the plaintiff was wrongfully deceived." 865 F.3d 1, 11 (1st Cir. 2017). Similarly, in *Benson v. Fannie May Confections Brands, Inc.*, the plaintiffs alleged that including empty space ("slack fill") in packages of chocolates misled consumers about how much chocolate they would actually receive. 944 F.3d 639, 648 (7th Cir. 2019). Like here, the plaintiffs contended that the purchase itself caused an injury, because they would not have purchased the items in question if they had known about the amount of slack fill in the packaging. *Id*. The Seventh Circuit rejected that theory of harm because it "assumes that they were injured." *Id*.

Instead, the caselaw has consistently shown that establishing an injury requires close consideration of the relationship between the value of goods received and the amount paid. For example, the Nevada and New Jersey Supreme Courts have each held that the plaintiffs failed to (and indeed could not) allege an injury where they "received the true value of their goods or services." *Leigh-Pink v. Rio Props., LLC*, 138 Nev. 530, 536 (2022); *see also Robey v. SPARC Grp. LLC*, 256 N.J. 541, 561–62, 311 A.3d 463, 475 (2024) ("plaintiffs … suffered no loss -- they purchased and received clothing that was not defective or damaged or worth less than they paid"); *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023); (assessing injury requires considering "the actual value of the product as received") (citation omitted); *Johnson v. Jos. A. Bank Clothiers,*

*Inc.*, No. 2:13-cv-756, 2014 WL 64318 at *10 (S.D. Ohio Jan. 8, 2014) (no actual injury because plaintiffs did not allege that the goods received were worth less than what they paid).

New York courts in particular, have consistently rejected pricing claims at the pleadings stage on this basis. *See, e.g., DaCorta v. AM Retail Grp., Inc.*, No.16-CV-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan 23, 2018) (applying New York law; "In the absence of facts related to the value of the purchased product, or how the product fell short of what it purported to be, the [] Complaint only reflects Plaintiffs subjective disappointment"); *Belcastro v. Burberry Ltd.*, No. 16-CV-1080 (VEC), 2017 WL 5991782, at *3 (S.D.N.Y. Dec. 1, 2017) (alleged false-discount case; concluding "New York law does not recognize an injury based on" the plaintiff's "but-I-thought-I-got-a-bargain" theory); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) ("Plaintiffs' argument [is] … a 'flawed deception as injury theory'—that is, 'that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349.").

Thus, while alleging (and proving at trial) that a deceptive act triggered a transaction might satisfy the causation element of each state's consumer fraud statute, Plaintiffs must establish a separate injury to business or property—that the alleged violation made the plaintiff objectively worse off.  Subjective disappointment is not enough. Yet that is all that Plaintiffs offer.

> **b.    Plaintiffs' claims that their purchases were not "worth" their reference prices says nothing as to whether plaintiffs received the benefit of their bargain.**

Plaintiffs also cannot establish injury by contending that the items they received were not "worth" the higher reference prices; this theory ignores the value that they received in the form of the items they purchased, and, if accepted would give Plaintiffs a windfall in the form of value they never paid for.

14

Plaintiffs identify no objective disparity between what they were promised and what they received. *See, e.g., Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844 (Tex. App. 2005) (no injury where the plaintiffs received the exact products they expected). Instead, the only difference they allege concerns an extrinsic detail—the price at which the items had previously been offered. Plaintiffs claim to have not received as good of a "deal" as they expected. Plaintiffs cannot convert this subjective disappointment into an objective disparity by claiming that the reference price is a representation about "worth" or "value." Price is not an inherent quality of clothing and does not reflect an "objective" value. While some items have intrinsic characteristics like "100% cotton" or "made in the U.S.A.," each of those attributes is intrinsic to the item and not subject to change once they are offered for sale. By contrast, "worth" and "value" are subjective concepts, especially when it comes to fashion.

For this reason, courts have consistently dismissed pricing claims where, as here, plaintiffs received exactly what they ordered at the exact price they intended to pay. *Leigh-Pink v. Rio Props., LLC*, 512 P.3d 322, 328 (2022) (benefit-of-the-bargain damages unavailable because the plaintiffs alleged a difference between what they received and their subjective expectations, rather than difference between what they received and what they were promised); *Robey v. SPARC Grp. LLC*, 256 N.J. 541, 561–62, 311 A.3d 463, 475 (2024) ("plaintiffs … suffered no loss -- they purchased and received clothing that was not defective or damaged or worth less than they paid"); *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681 (6th Cir. 2017); *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (charging an agreed price in exchange for clothing provides buyers with the benefit of their bargain).

Simply put, Plaintiffs received exactly what they ordered and paid the intended price. Unless they identify an objective difference between what they ordered and what they received,

they cannot deny that they received the benefit of their bargain.  And confusion over the former selling price is not such an objective difference.

> ### c.    Plaintiffs' fraud-on-the-market theory fails because plaintiffs do not claim to have paid more than the items are worth.

Plaintiffs also conclusorily allege that they paid more than they otherwise would have paid because "Defendant's false pricing scheme fraudulently increased demand from consumers." (Compl. ¶¶ 142, 171, 203, 236, 270, 308, 342.)  "As a result, Defendant *can* [but does not necessarily] charge a price premium for its Products."  (Compl. ¶ 54 (emphasis added).)  This argument is a red herring, because Plaintiffs never actually claim that they paid more than any given item was worth.

Regardless, while some courts have accepted a "fraud on the market" theory in cases concerning securities, there are fundamental flaws in applying it here.  Namely, the retail market is not an efficient market, so courts cannot assume that information important to consumers is immediately incorporated into prices.  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008) ("the market for consumer goods, however, is anything but efficient"); *Bohr v. Tillamook Cnty. Creamery Ass'n*, 321 Or. App. 213, 243 (2022).  Further, unlike investors, who purchase shares for a single motive (profit), retail consumers' motivations are highly idiosyncratic. That is especially true in the fashion context. Consumers buy clothing items for myriad reasons, including style, season, materials, comfort, fit, and brand loyalty.

> ## C.    Plaintiffs' Subclass Statute claims fail for numerous other reasons.

> ### 1.    *Plaintiffs' Michigan and Virginia Claims should also be dismissed for failure to identify the products at issue.*

Lashbrook and Jones cannot state a claim under the Michigan Consumer Protection Act or Virginia Consumer Protection Act because they fail to plead their claims with sufficient particularity.  Lashbrook merely claims that she bought "three jewelry Products"; Jones allegedly

bought "nine Products."  (*See* Compl. ¶¶ 72, 75.)  They claim that the unspecified higher reference prices on each of these mystery items was deceptive.

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Despite this requirement, Lashbrook and Jones do not specify the brand or SKU number, or even so much as give vague descriptions, of the items they purchased.  This is insufficient to put Hot Topic on notice of their claims, as Rule 8 requires, and falls well short of Rule 9(b)'s heightened standard, which establishes the objectives "of providing notice to a defendant of its alleged misconduct, of preventing frivolous suits, of eliminating fraud actions in which all the facts are learned after discovery and of protecting defendants from harm to their goodwill and reputation," *Nathan*, 707 F.3d at 456 (4th Cir. 2013) (citing *Harrison*, 176 F.3d at 784 (internal quotations omitted)).

### 2.    *Khan cannot invoke the New York GBL because she was not allegedly injured in New York.*

The Complaint alleges Khan made a purchase from HotTopic.com while living in Bloomfield Hills, Michigan.  Compl. ¶ 66.  Because the purchase that she was allegedly deceived into making occurred outside of New York, Khan's NY GBL claims fail for lack of statutory standing.

*Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019), *modified on reconsideration*, No. 15-CV-701-FPG, 2019 WL 11287650 (W.D.N.Y. Nov. 22, 2019), is instructive.  There, the court held New York residents lacked standing to bring GBL claims based on misrepresentations they viewed from outside of New York—even though their orders were delivered to New York (something Khan does not allege).  *See also Goshen v. Mut. Life Ins. Co.*,

17

98 N.Y.2d 314, 325 (2002) ("[GBL] analysis does not turn on the residency of the parties"). Khan similarly lacks standing here, as the alleged misrepresentation occurred while she was living in Michigan. Without adequate standing, her GBL claim must be dismissed.

### 3.   *Jones' VCPA claim is time-barred.*

Jones' VCPA is time-barred.  The applicable limitations period is two years.  Va. Code Ann. § 59.1-204.1.  Jones' purchase took place on January 7, 2020 (Compl. ¶ 72), nearly five years before this suit was filed on November 1, 2024.  The claim must be dismissed.

### 4.   *Merritt's SCUTPA claim is time-barred and cannot proceed on a class basis.*

Merritt's claim is similarly time-barred.  The statute of limitations for bringing a claim under SCUTPA is three years.  S.C. Code Ann. § 39-5-150.  Merritt alleges a single purchase, on March 14, 2019.  (Compl. ¶ 69.)  She filed her complaint on November 1, 2024 – more than five and a half years after making her purchase.  Her claim should be dismissed as untimely.

Regardless, Merritt cannot bring her SCUTPA on a classwide basis.  The statute is clear: a person "may bring an action individually, but not in a representative capacity." S.C. Code Ann. § 39-5-140. The South Carolina Supreme Court has found that SCUTPA claims may not be maintained in a class action suit.  *Dema v. Tenet Physician Services-Hilton Head, Inc*., 383 S.C. 115, 122, 678 S.E.2d 430, 434 (2009) (collecting federal cases [inc. 4th Cir.] finding same); *In re TD Bank, N.A*., *Debit Card Overdraft Fee Litig.,* 150 F. Supp. 3d 593, 635 (D. S.C. 2015); *Harris v. Sand Canyon Corp*., 274 F.R.D. 556, 565 (D.S.C. 2010).  This principle applies with equal weight in federal court, as "SCUTPA claimants should not be permitted to transform the nature and scope of the statutory right conferred upon them merely by pleading in federal court pursuant to Rule 23." *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 847 (C.D. Cal. 2024) (quoting *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 729 (D.S.C. 2016) and citing other

cases).  Even if Merritt's SCUTPA claim were to proceed – which it should not, as it is time-barred – the claims as to the South Carolina subclass should be stricken.

>    5.    ***The Economic Loss Rule bars Plaintiffs' Texas, New York, Michigan, and Maryland claims.***

The "economic-loss doctrine prohibits buyers from bringing tort suits against sellers for economic losses arising from the product that the parties exchanged in a commercial context." *Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 777 (6th Cir. 2019) (citing *Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 486 N.W.2d 612, 615 (1992)). Courts applying Texas, New York, Michigan, and Maryland law apply this doctrine to dismiss consumer protection claims based on a party's alleged failure to perform under a contract.  *See, e.g., Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416–17 (S.D.N.Y 2013) (New York law); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 369 (1995); *Cook v. USAA Fed. Sav. Bank*, No. 8:22-CV-01469-PX, 2024 WL 4201410, at *9 (D. Md. Sept. 16, 2024) (Maryland law); .

Because Plaintiffs each purport to bring breach-of-contract and breach-of-warranty claims, the economic loss doctrine bars their Texas, New York, Michigan, and Maryland claims.

>    D.    **The Court Should Dismiss Plaintiffs' California Claims.**

>    1.    ***California's presumption against extraterritoriality prevents UCL and FAL claims from applying to out-of-state consumers like Plaintiffs with no ties to California.***

Plaintiffs are not California residents, did not make their purchases in California, and allege no connection to California whatsoever. Yet they seek to bring claims and to represent a nationwide class under California law.  This they cannot do.

California law has a "presumption against extraterritoriality" that "applies to the UCL in full force." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see also Norwest Mortgage, Inc. v. Superior Court,* 72 Cal. App. 4th 214 (1999) (UCL "contains no express declaration that it was designed or intended to regulate claims of nonresidents arising from conduct occurring entirely outside of California"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)) ("Courts have recognized that the FAL is limited to application in California.").[3]

Even a nexus to California—which Plaintiffs here have not alleged—could not save Plaintiffs' claims. For example, in *Sullivan*, the court rejected out-of-state workers' attempt to pursue UCL claims against their California-based employer based on alleged FLSA violations for overtime worked outside of California. *Sullivan*, 51 Cal. 4th at 1207. Similarly, the *Norwest Mortgage* court held that out-of-state borrowers could not sue a California-based mortgage lender under the UCL for charging them unnecessarily expensive home insurance rates, where "the only contact between the claims of [the out-of-state borrowers] and California is Norwest Mortgage's state of incorporation." *Norwest Mortgage,* 72 Cal. App. 4th 214 at 227 (reversing lower court).

Here, too, Plaintiffs are out-of-state residents who allege conduct and harm occurring entirely outside of California. Thus, as a matter of law, the UCL and FAL cannot apply to Plaintiffs' claims.

---

[3] Maryland takes the same statutory approach. *See Chairman of Bd. Of Trustees of Emp. Ret. Sys. v. Waldron*, 285 Md. 175, 184, 401 A.2d 172, 177 (1979) (citing *Sandberg v. McDonald*, 248 U.S. 185, 195, 39 S. Ct. 84, 63 L.Ed. 200 (1918) (unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect).

### 2. *The UCL also does not apply, as a matter of California law, because other states have a greater interest in purchases within their borders.*

Even if the Court were to hold that California had some interest in applying its laws to Plaintiffs' claims, California law still cannot apply where, as here, the interests of other states outweigh California's interest in having its law applied. *Washington Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 921, 15 P.3d 1071, 1082 (2001).

The Ninth Circuit has recognized that "each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (UCL did not apply to claims that a California-based automobile manufacturer misrepresented cars' braking systems), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Thus, even where allegedly misleading representations emanate from California—something Plaintiffs do not allege here—California law still should not apply because foreign states have a greater interest in governing out-of-state transactions than California. *See id.*; *see also Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1285 (C.D. Cal. 2024) ("The fact that LoanDepot is headquartered in California does not produce a strong enough interest to tip the balance in favor of applying California law to residents of all other states when their injury occurred in other states."); *Hageman v. Hyundai Motor Am.*, No. SACV23-01045-CJC (KESx), 2024 WL 694378, at *4 (C.D. Cal. Jan. 5, 2024) (rejecting argument that California law should apply based on Hyundai's California headquarters); *Davison v. Kia Motors Am., Inc.,* No. SACV15-00239-CJC (RNBx), 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) (rejecting argument that California law should apply even though "California has an interest in regulating Kia as Kia's corporate office is located in California.").

### 3.    *Even Under a Choice-Of-Law Analysis, California Law Does Not Apply*

Even if this Court proceeded to a choice of law analysis, California law cannot apply. After all, the point of a "choice of law" analysis is to choose *one.* Here, Plaintiffs have already made that choice:  they claim that the consumer protection laws of their home states (i.e., not California) govern their claims.  The Court should not *also* apply the law of California, where Plaintiffs do not live and were not injured.

Maryland's choice-of law rules apply here and preclude California law from applying.  It is well-settled that a "[f]ederal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citations omitted).  Because this case is pending in the District of Maryland, Maryland's choice-of-law rules apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in [a state] must conform to those prevailing in [the forum state's] state courts."); *Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 587 (D. Md. 2019), as amended (June 17, 2019) (same).

Maryland courts apply the doctrine *lex loci delicti*, which provides:  "[W]here the events giving rise to a tort action occur in more than one State, [courts] apply the law of the State where the injury—the last event required to constitute the tort—occurred."  *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006) (citation omitted); *see also Jones v. Prince George's Cnty., Md.*, 355 F. App'x 724, 729 (4th Cir. 2009) (affirming district court's application of substantive law from state in which the harm occurred) (citation omitted)); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 605, 606 (D. Md. 2008).  Thus, even if there were a basis for California law to apply, which there is not, choice-of-law analysis would still favor the application of other states, where Plaintiffs reside, and where they made their purchases.

E.    **Plaintiffs' Breach-of-Contract and Breach-of-Express-Warranty Claims Fail for Numerous Reasons**

Plaintiffs purport to bring breach-of-contract and breach-of-express-warranty claims on behalf of a putative nationwide class.  The Uniform Commercial Code (the "U.C.C.") governs Plaintiffs' breach-of-contract and breach-of-express-warranty claims, as they are each based on Plaintiffs' purchase of goods.  U.C.C. § 2-102 (U.C.C. "applies to transactions in goods").

Plaintiffs' breach-of-contract and breach-of-warranty claims are subject to the heightened pleading standard of Rule 9(b), pled based on the same inadequate allegations as Plaintiffs' Subclass Statute claims, and thus fail under the Rule 9(b) standard as well.  Numerous other failures doom their breach-of-contract and breach-of-express warranty claims.

1.    *Plaintiffs fail to identify the applicable law.*

Plaintiffs' breach-of-contract and breach-of-express warranty claims fail out of the gate because the Complaint does not identify the applicable state law or laws.  Federal courts regularly dismiss common law claims alleged on behalf of putative nationwide classes where the plaintiff fails to identify the applicable state law.  *See, e.g., Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 4183936, at *7–8 (S.D. Cal. Sept. 3, 2019) ("Neither Starbucks nor the court can determine whether Brown alleges California law applies to the claims of out-of-state putative class members, or if she alleges the laws of various unidentified states apply to these putative class members' claims."); *Augustine v. Talking Rain Bev. Co.,* 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) ("Plaintiffs failure to identify which state laws govern their common law claims means the claims brought on behalf of the nationwide class have not been adequately pled"); *In re VTech Data Breach Litig.*, Nos. 15 CV 10889, 15 CV 10891, 15 CV 11620, and 15 CV 11885, 2018 WL 1863953, at *8 (N.D. Ill. Apr. 18, 2018) (dismissing common law unjust enrichment claim pursuant to Rule 8 for failure to identify what law plaintiffs are proceeding under).

This failure is significant because each state's adoption and application of the U.C.C. varies greatly. *See In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673 (N.D. Ill. 2009) (noting the substantial differences in the warranty laws of the 50 states); *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* 308 F.R.D. 630, 638 (N.D. Cal. 2015) (state express-warranty law does not uniformly apply across an entire class); *Lane v. Wells Fargo Bank, N.A.,* No. C 12-04026 WHA, 2013 WL 3187410, at *4 (N.D. Cal. Jun. 21, 2013) ("[a]djudicating plaintiffs' claim for breach of contract [claims] … would require applying a multitude of different state standards")

Here, Plaintiffs have not identified any state law or liability standard applicable to their breach-of-contract or breach-of-express-warranty claims.  They have, therefore, failed to provide Hot Topic with the notice to which it is entitled under Rule 8.

> ### 2.    *Plaintiffs' breach-of-contract and breach-of-express-warranty claims should be dismissed for failure to give required pre-suit notice of the breach.*

The U.C.C. requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." U.C.C. § 2-607(3)(A).  The purpose of this notice is to allow the alleged breaching party an opportunity to cure the breach and thereby avoid clogging dockets with needless litigation. Plaintiffs here do not claim to have provided pre-suit notice of the breach-of-contract or breach-of-express-warranty claims.  Failure to provide individual pre-suit notice is thus fatal to their breach claims.[4]  *See Nathan v. Whirlpool Corp.*, 492 F. Supp. 3d 747, 755 (S.D. Ohio 2020) (citing, e.g., *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 494, 221 Ill. Dec. 389, 395, 675 N.E.2d

---

[4] Likewise, Plaintiff Davis failed to give proper notice before filing her Texas DTPA claim.  Before filing for damages against any person, the requirement instructs that the consumers seeking to pursue the claim must provide "written notice to the person at least 60 days before filing the suit." Tex. Bus. & Com. Code § 17.505(a).

584, 590 (1996) (holding that the notice requirement is satisfied "only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer.")).

### F.    The Court Should Dismiss or Strike Plaintiffs' Prayers for Equitable Relief

Plaintiffs seek many forms of equitable relief, including restitution, rescission, a permanent injunction, and "disgorgement, and other just equitable relief" (*see, e.g.,* Compl. ¶¶ 86, 100, 173-75, 205-7, 238-40, 272-74, 310-12, 344-46, Prayer for Relief at d-f, h).   However, Plaintiffs lack Article III standing to seek injunctive relief because they face no risk of future injury.  Moreover, Plaintiffs do not plausibly explain why the damages they seek—including statutory damages, treble damages, and punitive damages where applicable (*see* Prayer for Relief at c)—would not provide an adequate remedy at law.  The Court should therefore strike these prayers for relief under Rule 12(f).  *See, e .g., Ross v. Tenn. Com. Warehouse, Inc*., No. 3:14-cv-00391-FDW-DCK, 2014 WL 4672424, at *7 (W.D.N.C. Sept. 18, 2014) (granting the defendant's motion to strike certain paragraphs of the plaintiff's prayer for relief on the ground that the plaintiff sought relief that was not available for the causes of action that he had asserted); *Helwig v. Suburban Chevrolet, Inc*., No. R-83-720, 1983 WL 539, at *9 (D. Md. Aug. 11, 1983) (same).

#### 1.    *Plaintiffs lack Article III standing to seek injunctive relief.*

Plaintiffs seeking injunctive relief must establish that they face an imminent threat of suffering concrete harm—that is, that the "threatened injury is certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013*)* (internal quotations and citation omitted)*.*  A mere chance at such a harm does not confer standing.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (the injury must be "actual and imminent, not conjectural or hypothetical"); *Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (plaintiff seeking injunction must show a "real and immediate threat of repeated injury").

Hypothetical threats do not suffice, and *Lujan v. Defenders of Wildlife* shows why.  There, the Supreme Court considered whether plaintiffs had standing to seek an injunction against funding activities for projects that threatened certain species' habitats in Egypt and Sri Lanka.  The U.S.-based plaintiffs alleged that they had visited and had intentions to revisit affected project sites in Egypt and Sri Lanka "some day," but the Court held that allegation fell short of the requirement that their injury be "imminent" and that "profession of an 'inten[t]' ... is simply not enough." 504 U.S. 555,563–64 (1992).  Moreover, even the fact that the plaintiffs had traveled to these areas previously was insufficient, because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *Lyons*, 461 U.S. at 102).

Since *Lujan*, the Supreme Court has underscored that a plaintiff seeking an injunction to prevent future injury must describe "concrete plans," and not merely a "vague desire," to engage in conduct that may expose him to injury.  *Summers*, 555 U.S. at 496 (quoting *Lujan*, 504 U.S., at 564) (plaintiff could not establish standing merely by alleging that she "want[s] to" return to the forest); *Carney v. Adams*, 592 U.S. 53, 65 (2020) ("a bare statement of intent alone" is insufficient). Circuit courts across the country are in accord.[5]

Here, too, Plaintiffs allege merely a hypothetical intent to shop at Hot Topic again—and not concrete plans.  They allege that they "would purchase Hot Topic Products from Defendant again in the future if they could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products, and that its

---

[5] *See, e.g.*, *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (no standing despite plaintiff's allegation that she would "consider buying" product in the future); *Beiersdorfer v. LaRose*, No. 20-3557, 2021 WL 3702211, at *7 (6th Cir. Aug. 20, 2021) ("generalized statements of future intent do not suffice to ground standing"); *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006) ("Plaintiffs' avowed intention to protest in a similar manner in the future is akin to the plaintiff in *Lujan* who declared, 'I intend to go back to Sri Lanka …,' but … had no current plans").

discounts were truthful." (Compl. ¶ 86.) This is precisely the kind of vague intention that *Lujan* and its progeny reject. Further, Plaintiffs now claim they are aware of Hot Topic's allegedly deceptive pricing practices, rendering the chance of future deception to nil.

Courts recognize that plaintiffs lack standing to seek injunctions against already-known sales practices. For instance, the Seventh Circuit affirmed the dismissal of Plaintiff's claim for injunctive relief in *Camasta*, explaining that because the plaintiff was "now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741. Thus, the Plaintiff had only a "speculative claim that he will again be harmed," which could not support injunctive relief. *Id*. at 741. Similarly, in *McNair v. Synapse Group, Inc.*, the Third Circuit held that the plaintiff lacked standing to enjoin the defendant's allegedly misleading subscription practices, because they were not at risk of being tricked into enrolling in future subscriptions. 672 F.3d 213, 225–26 (3d Cir. 2012). *See also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018) (questioning how plaintiff "could possibly be deceived again into buying [the product] without being aware of those same risks" and refusing to "give cognizance to this sort of "stop me before I buy again" claim"); *Berni v. Barilla S.P.A.*, 964 F.3d 141, 148–49 (2d Cir. 2020) (plaintiffs were not at risk of being deceived by "slack-fill" packaging in the future); *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017) (knowingly re-purchasing a product the features of which the defendant misrepresented defeats the purpose of injunctive relief).

Although the question of standing to seek injunctive relief for false-advertising claims is relatively novel in the Fourth Circuit, *Metague v. Woodbolt Distribution, LLC*, provides a helpful roadmap. No. 8:20-cv-02186-PX, 2021 WL 2457153, at *8 (D. Md. June 16, 2021). There, the court rejected allegations nearly identical to Plaintiffs' claims here:

> The general and somewhat contradictory averment that "Plaintiff and the Class members may in the future want to purchase the Product," but they expect that "Defendant will continue to misrepresent or conceal the amount of calories in the Product," does not save the claim when read in conjunction with the more particularly expressed intentions to purchase XTEND only if it were in fact zero-calories, not if it were properly labeled.

*Id.* at n.7.

Plaintiffs' claims suffer the same flaw. Plaintiffs have made clear that they would not have purchased products from Hot Topic but-for its allegedly deceptive discounts. (Compl. ¶¶ 12, 54, 58, 62, 65, 68, 71, 74, 77, 80, 85, 141, 170, 202, 235, 269, 307, 341, 360, 376, 391). Thus, now aware of Hot Topic's alleged scheme, Plaintiffs are not at risk of being harmed again.

   **2.    *Plaintiffs' claims for equitable relief are barred as a matter of law because they have not adequately pled that they lack an adequate remedy at law.***

Plaintiffs' claims also fail because they cannot credibly allege a prerequisite to their equitable-relief claims—lack of an adequate remedy at law. "[T]he fundamental rule of equitable jurisdiction in the federal court [is] that a complainant may not sue in equity if he has an adequate remedy at law." *Henrietta Mills v. Rutherford Cnty.,* 32 F.2d 570, 575 (4th Cir. 1929), *aff'd*, 281 U.S. 121 (1930). Case after case has dismissed claims for equitable relief, when plaintiffs fail to demonstrate that they lack an adequate remedy at law. This is "axiomatic." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *see also Younger v. Harris*, 401 U.S. 37, 43–44 (1971) (referring to this "basic doctrine of equity jurisprudence that courts of equity should not act…when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"); *Cath. Soc. of Religious & Literary Educ. v. Madison Cnty.*, 74 F.2d 848, 850 (4th Cir. 1935) ("fundamental rule in equity in the federal courts is that a suit will not lie when there is an adequate remedy at law"). The Court should do the same here.

Plaintiffs admit that adequate legal relief is available in the form of actual damages (including statutory, and treble and punitive damages, as applicable).  (Compl. ¶¶ 100, 106, 144, 173, 205, 238, 272, 310, 344, Prayer for Relief at c.)  That admission dooms their prayer for equitable restitution.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion").

While Plaintiffs contend, conclusorily, that damages would not remedy their claim for forward-looking relief, numerous courts have applied the adequate-remedy principle to dismiss such claims.  *See*, *e.g.*, *O'Shea*, 414 U.S. at 502 (injunctive-relief claim failed because it did not plead "the inadequacy of remedies at law"); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975) (shareholder not entitled to injunctive relief where damages provided an adequate remedy). The Ninth Circuit has twice applied these principles to dismiss UCL claims seeking injunctive relief and restitution.  *Philips v. Ford Motor Co*, 726 F. App'x 608, 609 (9th Cir. 2018); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023); *see also In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) ("monetary damages would provide an  adequate remedy for the alleged injury."); *Gibson v. Jaguar Land Rover N. Am.*, *LLC*, No. CV 20-00769-CJC (GJSx), 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020) (same: "there is nothing in the SAC to suggest that monetary damages would not make Plaintiffs or the putative class whole").  In short, "if the legal remedy would be as effective as an injunction in providing the claimant with relief, there is no need for the court to invoke its equity jurisdiction." *Wright & Miller*, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.)

Plaintiffs have not alleged a reason why damages could not provide an adequate remedy. Their claims for equitable relief thus fail.

## V.     CONCLUSION

For the reasons stated herein, the Motion to Dismiss should be granted.


Dated:  February 7, 2025                              Respectfully submitted,

                                                      _/s/ Tamara B. Goorevitz_____
                                                      Tamara B. Goorevitz (#25700)
                                                      FRANKLIN & PROKOPIK, P.C.
                                                      2 N. Charles Street, Suite 600
                                                      Baltimore, MD 21201
                                                      Ph: 410.230.3625
                                                      Fax: 410.752.6868
                                                      tgoorevitz@fandpnet.com

                                                      *Attorneys for Defendant Hot Topic, Inc.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2025, a copy of foregoing was delivered via the

Court's ECF system and email to:

        Cory L. Zajdel, Esq.
        David M. Trojanowski, Esq.
        Jeffrey C. Toppe, Esq.
        Z LAW, LLC
        2345 York Road, Suite B-13
        Timonium, MD 21093
        clz@zlawmaryland.com
        jct@zlawmaryland.com
        dmt@zlawmaryland.com

        *Attorneys for Named Plaintiffs*

                                                      _/s/ Tamara Goorevitz_____
                                                      Tamara Goorevitz (#25700)