IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**DANIELLE GURNEY,**

*Plaintiff*,

v.

**Civil No.: 1:25-cv-00318-JRR**

**HOT TOPIC, INC.,**

*Defendant*.

### MEMORANDUM OPINION

Pending before the court is Defendant Hot Topic, Inc.'s Motion to Dismiss.  (ECF No. 21; the "Motion.")   The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND[1]

Plaintiff Danielle Gurney, a citizen of Maryland, brings the instant action against Defendant on behalf of herself, and others similarly situated, for violations of California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500 *et seq.* (Count I) and Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.* (Count II).  (ECF No. 17; the "First Amended Complaint.")

### A.  About Defendant and Defendant's Alleged Pricing Scheme

Defendant Hot Topic, Inc., "makes, sells, and markets clothing and accessories" (the "Products"), including through its website, HotTopic.com.  (ECF No. 17 at ¶ 8.)  Defendant is incorporated under the laws of California, and maintains its corporate headquarters there.  *Id.* ¶¶

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the First Amended Class Action Complaint.  (ECF No. 17.)  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

23-24. "Defendant's executive and leadership team are located in California." *Id.* ¶ 27. It "operates one of its two distribution centers in California," and has "more retail store locations in California than in any other state." *Id.* ¶¶ 25–26. Plaintiff alleges that Defendant's website, website servers, and IP addresses are "located" in California.[2] *Id.* ¶¶ 28–30. The representations contained on Defendant's website were made and disseminated from within California. *Id.* ¶¶ 34–35. "Decisions related to marketing and pricing of Products sold on the website are made in California." (ECF No. 17 at ¶ 31.) On information and belief, Plaintiff alleges that the alleged pricing scheme at issue, as well as all critical decisions related thereto, were conceived, implemented, and created in California. *Id.* ¶¶ 32–33.

Getting to the substance of the action, Plaintiff alleges that "Defendant creates the false impression that its Products' regular prices are higher than they truly are" by listing "made up" (*i.e.*, false) regular prices on its website and by failing to regularly sell Products on its website at non-discounted prices. (ECF No. 17 ¶¶ 38–40.) In all, "Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts." *Id.* ¶ 63. "At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts always purportedly offer 20% or more off the non-discounted prices Defendant advertises. Even though, in truth, these discounts run in perpetuity, Defendant prominently claims that they are 'LIMITED TIME.'" *Id.* ¶ 41. Plaintiff identifies advertised sales of at least 20% off on a multitude of occasions ranging from January 20, 2021, to February 27, 2024. *Id.* ¶¶ 42–60. "Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely." *Id.* ¶ 62. These tactics lead "reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the 'limited-

---

[2] The court acknowledges that websites and IP addresses are not literally "located" in any particular physical geographic location.

time' promotion." *Id.* ¶ 65.  But consumers "do not ever actually receive the promised discount, because the price of a given Product that is subject to the promised discount is actually the normal price." *Id.* ¶ 66.  Plaintiff alleges that "[r]easonable consumers also reasonably believe that the list prices that Defendant advertises represent Defendant's regular prices, and the true market value of the Products, and that they are the prevailing prices for those Products." *Id.* ¶ 68.

### B.  Plaintiff's Hoodie Purchase

While living in Rising Sun, Maryland, Plaintiff purchased a "My Hero Academia Izuku Midoriya Hoodie" (the "Hoodie") from Defendant's website on November 10, 2021.  (ECF No. 17 ¶ 92.)  Defendant's "fake sales" were in effect when Plaintiff made her purchase.  *Id.* ¶ 89. Specifically, on that day, every page of the website declared that "every product was '20% Off.'" *Id.* ¶ 93.  The individual product page for the Hoodie advertised the item was "30% Off," with the discount ending that night.  *Id.* ¶ 94.  The posted "regular price" of the Hoodie was $49.90, but the website showed "a discounted price of $34.93 and a time-limited discount of $14.97 using a red font and expressed as savings with a negative number."  *Id.* ¶ 95.  This discount was noted on Defendant's checkout page and online receipt.  *Id.* ¶¶ 96–97.  Plaintiff "read and relied" on the "20% Off" and "30% Off" representations, as well as the representation that the "30% Off" discount ended that night.  *Id.* ¶¶ 100–103.  In reality, Plaintiff alleges, Defendant's website listed the price of the Hoodie as "$49.90 consecutively for many months prior to the November 10, 2021 purchase and remained listed at that price for many months after," and "Defendant was offering '20% Off' everything on the website and '30% Off' this product for well longer than three months."[3]  *Id.* ¶¶ 98–99.  "Defendant made these false representations with the purpose of

---

[3] As set forth below, the FAL provides: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement . . . ."  CAL. BUS. & PROF. CODE § 17501

misleading [her] into believing that the Products," including the Hoodie, "were being offered at a discount for a limited time and had higher regular and usual prices, and that she would be receiving a price reduction by buying now." (ECF No. 17 ¶ 104.)

Based on Defendant's representations, Plaintiff "reasonably understood" that the Hoodie she was purchasing "retailed at the published list price, that this published list price was the market value of the Product that she was buying, that she was receiving the advertised discount and a price reduction as compared to the regular price, and that the advertised discount was only available for a limited time (during the limited time promotion)." *Id.* ¶ 105. Instead, however, the Hoodie "was almost always available for sale at below the published 'list' price, and therefore, the representation that the Product had a 'list' price of the amount listed on Defendant's website was false and misleading." *Id.* ¶ 106. Plaintiff was misled by Defendant's representations, and she would not have purchased the Hoodie if she had known it was not discounted as advertised. *Id.* ¶¶ 86, 113. Plaintiff alleges she was harmed by this scheme because it "depriv[ed]" her "of the reasonable expectations to which [she is] entitled," because "instead of receiving a significant discount, [she] received little or no discount." *Id.* ¶ 82. Further, due to Defendant's misrepresentations, Plaintiff paid more for the Hoodie than she otherwise would have. *Id.* ¶ 85.

Plaintiff contends that she "face[s] an imminent threat of future harm," because "Defendant's pricing scheme is ongoing and is likely to mislead consumers in the future." Plaintiff "intends to purchase Hot Topic Products from Defendant again in the future if she could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products, and that its discounts were truthful." (ECF No. 17 ¶ 116.) Plaintiff brings the instant class action, asserting claims under the FAL and UCL, and seeking restitution and an injunction. *Id.* ¶ 117.

## II.    LEGAL STANDARDS[4]

### A.  Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient.  *Twombly*, 550 U.S. at 555.

---

[4] Defendant alternatively moves for dismissal of Plaintiff's claim for injunctive relief pursuant to Rule 12(b)(1), arguing that she lacks standing to seek such relief.  While the court typically addresses jurisdictional challenges prior to pleading challenges, given that the court concludes that Plaintiff has failed to plead her claims with the requisite particularity under Rule 9(b), and Defendant has asserted its argument in the alternative, the court need not reach the 12(b)(1) challenge.

### B. Federal Rule of Civil Procedure 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see Iqbal*, 556 U.S. at 686 (holding that "Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'"); *Layani v. Ouazana*, No. CV ELH-20-420, 2021 WL 805405, at *23 (D. Md. Mar. 3, 2021) (providing that "[c]laims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Rule 9(b)."). "These circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)). They are often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

## III.   ANALYSIS

Plaintiff brings her claims under California's FAL and UCL, which "require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). These laws "prohibit not only false advertising, but also advertising that is 'either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (quoting *Williams v. Gerber Prods.*

*Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  At issue here, the FAL provides: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement . . . ."  CAL. BUS. & PROF. CODE § 17501.  The UCL, in turn, prohibits "unlawful, unfair, or fraudulent" business practices, each of which constitutes a type of unfair competition.  CAL. BUS. & PROF. CODE § 17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Defendant challenges Plaintiff's claims on multiple bases, two of which the court substantively addresses below, including that 1) California's presumption against extraterritorial application of its statutes effectively blocks Plaintiff from bringing her California statutory claims in this jurisdiction; and 2) Plaintiff's allegations of fraud (as part of her FAL and UCL claims) are insufficient under Federal Rule of Civil Procedure 9(b).[5]  (ECF No. 21-1 at pp. 1–2.)

### A.  Presumption against Extraterritorial Application

There exists a so-called "presumption against extraterritorial application" of California's statutes, including the FAL and UCL.[6]  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)  Indeed, "California consumer protection statutes 'presumptively do not apply to occurrences

---

[5] Excepting the injunctive relief challenge discussed *supra*, Defendant's remaining argument concerns application of Maryland law on choice of law and related analysis.  The court declines to reach this argument, both because it finds (as discussed below and referenced above at footnote 4) that dismissal is warranted on other grounds, and because the court finds the parties fail to address the appropriate disposition.  Defendant's papers assume that if Maryland law applies, Plaintiff's claims must be dismissed.  Perhaps that is true, as suggested by Plaintiff's filing of the First Amended Complaint, but additional argument is necessary as to any conflict of law and how any such analysis may (or may not) support dismissal.  The papers simply fail to set forth the reasoning on which Defendant relies as required (*see* Local Rule 105.1), and thus fail to properly address that important aspect of the Motion.  The court makes no findings on this issue.

[6] Defendant notes that this presumption operates as a barrier to Plaintiff's "standing to assert a UCL or FAL claim." (ECF No. 21-1 at p. 10.)  The court understands Defendant's challenge as one sounding in statutory standing— meaning that a plaintiff must "satisfy the statutory requirements of the laws of the States they are invoking." *See Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021).  Dismissal for lack of statutory standing is "effectively the same as a dismissal for failure to state a claim."  *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011).

outside California.'"  *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1021 (N.D. Cal. 2021) (quoting *Wilson v. Frito-Lay N. Am. Inc.*, 961 F.Supp.2d 1134, 1147 (N.D. Cal. 2013)).  "However far the Legislature's power may theoretically extend, [courts] presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'"  *Sullivan*, 51 Cal. 4th at 1207 (citing *Diamond Multimedia Sys. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999)).

Relevant here, "the presumption against extraterritoriality applies to the UCL in full force." *Id.*  "Simply put, 'the UCL does not apply to actions occurring outside of California that injure non-residents.'"  *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014) (quoting *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.,* C–09–5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x. 362 (9th Cir. 2012)).  Relatedly, "[c]ourts have recognized that the FAL is limited to application in California."  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011).  By its language, the FAL "prohibits false or misleading statements made 'before the public in [California]' and 'from [California] before the public in any state.'"  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (quoting CAL. BUS. & PROF. CODE § 17500).

Importantly, however, California statutory claims "may be available to non-California residents if those persons are harmed by wrongful conduct occurring in California."  *Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 911 (N.D. Cal. 2020) (emphasis omitted) (quoting *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 916).  "The critical issues [ ] are whether the injury occurred in California and whether the conduct of Defendants occurred in California.  If neither of these questions can be answered in the affirmative, then [a] Plaintiff will be unable to

avail herself of these laws." *Id.* (alterations in original) (quoting *Tidenberg v. Bidz.com, Inc.*, 2009 WL 605249, at \*4 (C.D. Cal. Mar. 4, 2009)).  Thus, in considering whether the presumption may apply, "courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made'" *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1021 (N.D. Cal. 2021) (quoting *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 917).  "Multiple courts—including the California Supreme Court in *Sullivan*—have permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California." *Ehret*, 68 F. Supp. 3d at 1130 (discussing cases).

In considering this analysis, comparative caselaw is helpful.  By way of example, courts have held that a single, conclusory allegation that the defendant made the decision to engage in the unlawful conduct in California is insufficient to overcome the presumption.  *See, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 4761733, at \*5 (C.D. Cal. Apr. 12, 2012) (regarding a single allegation that "Defendants' scheme was devised, implemented and directed from [its] offices in California'"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 917 (regarding the sole allegation that "the decision to . . . engage in deceptive marketing was made, in part, in California"); *Sullivan*, 51 Cal. 4th at 1208  (regarding "only a single instance of relevant conduct occurring in California"—that the challenged decision-making occurred primarily from headquarters in California).

Courts have also found allegations that a defendant is headquartered in California accompanied by conclusory assertion that the challenged conduct emanated from California insufficient to overcome the presumption.  *See, e.g.*, *Pattison v. HP Inc.*, No. 24-CV-02752-MMC,

2024 WL 5011945, at *2 (N.D. Cal. Dec. 5, 2024) (regarding allegations that defendant's headquarters and principal place of business were located in California, and that the "acts and omissions giving rise to [her] claims occurred in and emanated from this District"); *Warner*, 105 F. Supp. 3d at 1096–97 (regarding allegations that defendant's principal place of business was in California and that the decision to engage in the alleged unlawful acts emanated from California); *Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012) (regarding allegations that defendant was headquartered in California and "the challenged conduct 'occurred in, was directed and/or emanated from'" defendant's California offices); *Tidenberg*, 2009 WL 605249, at *4–5 (regarding allegations that defendant's principal place of business in California and a presumption that "any false and misleading statements emanated from California"). And the presumption is certainly not overcome where a plaintiff asserts claims for "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 225 (1999).

Conversely, where a plaintiff offers sufficient allegations tying a defendant's conduct to California, courts have found the presumption does not bar California statutory claims. For example, in *Ehret v. Uber Techs., Inc.*, the court noted:

> Plaintiff alleges that Uber is a "Delaware corporation with its headquarters in San Francisco, California." It further alleges that:
>
> > The deceptive practices alleged herein were conceived, reviewed, approved and otherwise controlled from Defendant's headquarters in San Francisco, California. Furthermore, the misrepresentations and omissions alleged herein were contained on Defendant's website and mobile phone application, which are maintained in California. When Plaintiff and class members used Defendant's services those [sic] transactions, including the billing and payment

> for those services, were processed on Defendant's servers in San Francisco, California.
>
> On the basis of these allegations, the Court finds that Plaintiff has alleged a sufficient nexus between California and the misrepresentations which form the basis of Plaintiff's claims.

68 F. Supp. 3d 1121, 1131–32 (N.D. Cal. 2014) (record citations omitted).

Other courts have found similarly. *See, e.g.*, *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2018 WL 6264994, at *4–5 (C.D. Cal. Oct. 9, 2018) (regarding allegations that defendant is headquartered and registered to do business in California, and that defendant's "control of the labeling, advertising, promotion, quality control, and sale of the bats— occurred at its headquarters and principal place of business" in California); *Underwood v. Future Income Payments, LLC*, No. SACV171570DOCDFMX, 2018 WL 4964333, at *12 (C.D. Cal. Apr. 26, 2018) (regarding "ample allegations that the alleged wrongful conduct occurred in California," including that defendant conducted business out of California, established marketing affiliates out of California, and that the company's owner, with ties to California, engaged in the alleged fraudulent scheme); *Lewand v. Mazda Motor of Am., Inc.*, No. SACV1700620JVSJCGX, 2017 WL 8117764, at *4–5 (C.D. Cal. Nov. 8, 2017) (regarding allegations that defendant "'authorized, approved, and disseminated" a brochure at issue from its California headquarters, and that the brochure was drafted and developed by an advertising agency in California); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANX), 2014 WL 10988343, at *5 (C.D. Cal. Dec. 29, 2014) (regarding allegations that defendant was incorporated and had its principal place of business in California, that defendant markets and arranges for nationwide distribution from its California headquarters, and that defendant made decisions regarding reimbursement for repairs at issue and developed relevant materials related to the issue); *In re iPhone 4S Consumer Litig.*, No. C 12–1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (regarding allegations

11

that defendant's "purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions' regarding marketing and advertising were made within the state").

The question, then, is whether Plaintiff's allegations here are sufficient to overcome the presumption against extraterritorial application of the FAL and UCL. Defendant urges that Plaintiff's allegations are more akin to the above-cited cases finding the plaintiff's allegations insufficient to overcome the presumption, because she is a Maryland resident who purchased the Hoodie while here in Maryland. While a close call, the court disagrees. Plaintiff does not simply allege that Defendant is headquartered in California and that the alleged unlawful conduct emanated from there. She alleges particular facts tying Defendant's conduct to California, including that Defendant's headquarters, including its executive and leadership teams, are in California; that Defendant operates a distribution center and retail stores in California; that Defendant's website, website servers,[7] and IP addresses are located in California; that the representations on Defendant's website that form the basis of her claims were made in, and disseminated from, California; and finally, that—albeit on information and belief—the pricing scheme at issue, as well as related critical decisions, was conceived of and created in California. (ECF No. 17 ¶¶ 23–36.) These allegations bear on Defendant's operation of its website, its marketing decisions (reflected on its website through which it offers the Products for purchase by the consuming public), and Defendant's representations to the public about the Products, all of which materially relate to Plaintiff's claims. These allegations provide a far stronger nexus to California than the allegations in the cases upon which Defendant relies. Moreover, contrary to

---

[7] The court notes that Defendant disputes this point. (ECF No. 23 at p. 8 n.4.) But the court is of course obliged at the present stage to accept as true the allegations in the First Amended Complaint.

Defendant's contention, only some (though not all) allegations are based on Plaintiff's information and belief.[8]

Based on the foregoing, the court will deny the Motion as to the presumption against extraterritoriality.

### B. Sufficiency of Plaintiff's Fraud Allegations

As discussed above, Federal Rule of Civil Procedure 9 requires that the circumstances constituting fraud be stated "with particularity." FED. R. CIV. P. 9(b). Where, as here, Plaintiff's claims of a false pricing scheme sound in fraud, her pleadings are subject to the heightened Rule 9(b) pleading standard. *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (noting "UCL and FAL claims sounding in fraud are also subject to the Rule 9(b) standard"). The circumstances constituting fraud refer to "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)). Such detail is required "to prevent frivolous suits, stop fraud actions where everything is learned after discovery (*i.e.,* fishing expeditions), and to protect defendants' reputations." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022) (citing *U.S. ex rel. Wilson v. Kellogg*

---

[8] To be sure, "[u]nder the pleading standard the Supreme Court of the United States articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009)). But this standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010)); *see Jones-McDaniel v. Bd. of Educ. of Montgomery Cnty.*, No. CV DKC 24-3075, 2025 WL 2494345, at *4 (D. Md. Aug. 29, 2025) (discussing same). Still, even in this circumstance, "conclusory pleading is not permitted." *Jones-McDaniel*, 2025 WL 2494345, at *4. A plaintiff "must include substantive facts in support of that belief." *Id.*

*Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). Ultimately, where a court is satisfied "that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial" and that "plaintiff has substantial prediscovery evidence of those facts," it "should hesitate to dismiss a complaint under Rule 9(b)." *Nicholson*, 42 F.4th at 195 (quoting *Harrison*, 176 F.3d at 784).

As an initial matter, the court notes the importance of an allegation-specific analysis when considering whether the Rule 9(b) pleading standard is met with regard to FAL and UCL claims. As the Southern District of California noted:

> The Ninth Circuit has yet to decisively address the level of factual detail required under Rule 9(b) to sufficiently plead similar claims brought under the FAL, UCL and CLRA. In *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017), the court found it sufficient to plead that two items of clothing the plaintiff purchased at an outlet store were not being sold "in the area" by either the defendant or other merchants for the higher "compared to" price listed on the price tags. The complaint also alleged that the defendant was not "reasonably certain" that the items were being sold in the area at the time. *Id.* The court applied a "relaxed" Rule 9(b) standard, noting that the plaintiff could not reasonably be expected to have detailed personal knowledge of the defendant's internal pricing policies for its outlet stores. 687 F. App'x at 568; *see also Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019) (denying motion to dismiss on similar grounds).
>
> In contrast, in *Sperling v. DSWC, Inc.*, 699 F. App'x 654 (9th Cir. 2017), the court found it insufficient to plead that two pairs of shoes purchased at an outlet store were never sold at the higher "compare at" prices listed on the price tags. 699 F. App'x at 655. The store's website disclaimed that the "compare at" prices were the manufacturers' suggested retail prices (MSRPs). *Sperling v. DSW, Inc.*, Case No. 15cv1366 JGB (SPX), 2016 WL 354319, at *2 (C.D. Cal. Jan. 28, 2016) (lower court decision). The complaint also stated that an "independent investigation" by the plaintiff "revealed" that the prevailing market price for the shoes was less than the listed "compare at" price and the investigation was "unable to find any retail outlet selling identical shoes" at the "compare at" price. 2016 WL 354319, at *3. The Ninth Circuit found these facts insufficient because (1) MSRPs on price tags are not "inherently false or

deceptive" and (2) the plaintiff did not state when she conducted her search for the products. 699 F. App'x at 655.

Since *Rubenstein* and *Sperling*, district courts have reached different conclusions on the level of factual detail required in cases alleging that products were never sold at the reference prices advertised on their price tags. Some claims have survived motions to dismiss. Others have not.

*Fisher v. Eddie Bauer LLC*, No. 19CV857 JM (WVG), 2019 WL 9467922, at *4 (S.D. Cal. Oct. 18, 2019) (omitting footnotes collecting cases).

In considering Plaintiff's allegations here, the court finds persuasive a number of cases that address (somewhat) similar claims. In *Schertzer v. Samsonite Co. Stores, LLC*, the Southern District of California found a plaintiff's allegations as to the misleading nature of the defendant's pricing insufficient:

> The allegations in Plaintiff's Complaint concerning the misleading nature of Defendant's pricing, like those in the cases cited by Defendant, are insufficient to meet Rule 9(b)'s heightened pleading standard. *Rael v. New York & Company* ("*Rael v. NY&C I*"), No. 16-cv-360-BAS(JMA), 2016 WL 7655247 (S.D. Cal. Dec. 28, 2016), is instructive. In *Rael v. NY&C I*, the plaintiff alleged that she had purchased shoes for $16.17—advertised as being 70% off the "Market" price of $49.94—at the defendant's retail store in an outlet mall. *Id.* at *1. She claimed that the pricing was false and misleading because the $49.94 price had not been the prevailing retail price for the shoes during the three months immediately prior to her purchase. *Id.* at *2. Further, she would not have purchased the shoes absent these misrepresentations. *Id.* The Honorable Cynthia Bashant concluded that the plaintiff failed to meet Rule 9(b)'s pleading standards because she did "not provide any facts that demonstrate why or how the original retail price of $49.94 [wa]s false" beyond her allegation that the shoes she had purchased were not sold at the $49.94 price in the three months before her purchase. *Id.* at *6. This is the same theory—and the same allegations—advanced by Plaintiff here. *See, e.g.*, Compl. ¶ 16 ("Upon information and belief, the Suitcase, however, was never offered for sale at its original 'OUR PRICE' in Defendant's outlet stores, nor was it offered for sale at its advertised 'OUR PRICE' within the 90-day period immediately preceding Plaintiff Schertzer's purchase anywhere in the relevant market.").

15

No. 19-CV-639 JLS (MSB), 2020 WL 4281990, at *4 (S.D. Cal. Feb. 25, 2020); *see also Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS(JMA), 2016 WL 7655247, at *6 (S.D. Cal. Dec. 28, 2016) (finding insufficient plaintiff's allegation that "the regular price of the shoes, $49.94, and the discounted price of $16.17 were 'false and misleading' because the retail or market price for the shoes three months before her purchase was never $49.94" because plaintiff did not allege "any facts that demonstrate why or how the original retail price of $49.94 is false").[9]

As another example, the *Fisher* court, discussed above, considered allegations of a fraudulent pricing scheme and found them to be deficient:

> The gravamen of Fisher's Complaint is that Eddie Bauer engaged in a "fraudulent pricing scheme" in which Eddie Bauer put false reference prices on the price tags of "almost all" of the merchandise at its outlet "stores," (Compl. at 2-3, 7-9), and in which Eddie Bauer's "direct to outlet" merchandise is sold "exclusively" at its outlet stores and is "never" sold "anywhere" at the reference prices on the price tags, (*id.* at 3, 5-7). These assertions are conclusory allegations, not facts. *See Seegert II*, 2018 WL 3472561, at *3-4; *but cf. Covell*, 2018 WL 558976, at *4 (finding that plaintiff's assertion that the merchandise was never sold anywhere at the suggested retail price was a "specific fact" that the court was required to accept as true). The only facts Fisher pleads to support his allegations of a fraudulent pricing scheme consist entirely of the following: an

---

[9] Notably, in that case, the plaintiff subsequently amended her complaint to include additional allegations that the court found sufficient:

> In this case, with respect to the shoes Plaintiff allegedly purchased in reliance on a 70% off representation, Plaintiff alleges the shoes "had not been sold in any New York & Company retail store . . . at the regular price of $49.95 in the 90 days preceding her purchase. The shoes Mr. Rael purchased had been continuously, substantially discounted for at least several months according to Plaintiff's counsel's investigation, and possible longer" . . . . With respect to the class allegations, Plaintiff attaches to the [amended pleading] . . . "examples" "of the products Plaintiff investigated and determined to be continuously discounted from their 'regular price' for 90 or more days in the retail stores[.]" (TAC ¶ 33.) Exhibit E lists the date, the store, and the product that was investigated. The Court finds this is sufficient. It gives Defendants notice as to the basis for Plaintiff's claim that the 70% off representation was false, and the information about the discounts offered by Defendants is primarily within the Defendants' knowledge.

*Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS(JMA), 2017 WL 3021019, at *4 (S.D. Cal. July 17, 2017).

> investigation conducted by Fisher's counsel "cataloged pricing practices" at the Eddie Bauer outlet store in Alpine, California for several months before and after Fisher's purchase on or about December 22, 2018, and the only thing that changed was the percentage discount on "certain merchandise." (Compl. at 8-9.) The only products that Fisher specifies were included in the investigation are the two items he purchased. He claims the investigation confirmed "the merchandise purchased by Mr. Fisher was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding [Fisher's] purchase." (*Id.*)
>
> The fact that two products remained on sale for at least 90 days does not provide sufficient support for his allegation of a fraudulent pricing scheme involving almost all of the merchandise at Eddie Bauer outlet stores.

2019 WL 9467922, at *5.  The *Fisher* court went on to note that the plaintiff's investigation "[fell] short of a straight-forward and responsible effort to support his broad claim of a fraudulent pricing scheme," and cited several cases where the complaints set forth the requisite investigation detail. *Id.* at *6.

Considering the nature of Plaintiff's claims, the authority above, and Plaintiff's allegations, the court is not persuaded that Plaintiff has alleged the purported fraudulent pricing scheme with the requisite particularity.  It is not apparent, based on her allegations, that Plaintiff "has substantial prediscovery evidence" of the allegations here.  *See United States ex rel. Nicholson*, 42 F.4th at 195, *supra*.  Indeed, like the cases above, Plaintiff's First Amended Complaint is devoid of factual (and non-conclusory) allegations of any purported investigation into her claims; she relies instead only on conclusory assertion that the Hoodie at issue "was priced at $49.90 consecutively for many months prior to the November 10, 2021 purchase and remained listed at that price for many months after," yet "Defendant was offering '20% Off' everything on the website and '30% Off' this product for well longer than three months."  (ECF No. 17 ¶ 98–99.)  She also relies on a series of allegations that purport merely to catalog Defendant's advertised discounts for dates within the

17

months of September 2021 through February 2024. *Id.* ¶¶ 42–61 (*see, e.g.*, ¶¶ 53–54, "Defendant prominently posted on its website on August 2, 2022 that every product was '20% Off[.]'" "Defendant prominently posted on its website on December 8, 2022 that every product was '20% Off[.]'") These allegations do not reflect any meaningful investigation of Plaintiff's claims, nor do they offer the necessary factual support for Plaintiff's allegations of unlawful conduct more broadly.

In her response to Defendant's argument, Plaintiff cites a single case to support that her allegations "if proven, establish that the reference price was a sham"—*Moody v. Hot Topic, Inc.*, No. EDCV 23-0447 JGB (SPX), 2023 WL 9511159 (C.D. Cal. Nov. 15, 2023). (ECF No. 22 at p. 9.) Against the backdrop of the many cases above, the court is not persuaded that *Moody* supports the sufficiency of Plaintiff's pleading. Moreover, as far the court can discern, the *Moody* court had more detailed allegations (and evidence) before it that reflected the plaintiff had undertaken the requisite investigation, which was demonstrated by supporting screenshots. *See Moody*, 2023 WL 9511159, at *9. Plaintiff's allegations here, while perhaps similar to those in *Moody* in that they relate to sitewide discounts, are conclusory to an extent and degree not apparently the case in *Moody*.

Based on the foregoing, Plaintiff fails to allege facts with particularity in support of the purported fraudulent scheme at issue as required by Rule 9(b). The Motion will therefore be granted on this basis.

### C. Plaintiff's Request for Leave to Amend

Plaintiff requests that, to the extent the court finds any deficiency in her First Amended Complaint, she be granted leave to file an amended pleading. (ECF No. 22 at p. 14.) Defendant does not respond to Plaintiff's request. (ECF No. 23.) Rule 15(a) counsels that "[t]he court should

freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). It is the Fourth Circuit's policy "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Despite the case being over a year old, it is in a procedurally early posture; discovery has not yet commenced. Moreover, there is no apparent prejudice to Defendant or bad faith by Plaintiff, and, in view of the pleading deficiencies above, amendment would not be futile on its face. *Johnson*, 785 F.2d at 509 (citing *Foman*, 371 U.S. at 182). Where the court's dismissal is premised on a pleading deficiency, and Defendant does not oppose the request, the court will grant leave to amend.

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 21) will be granted. The court will grant Plaintiff leave to file an amended pleading within 14 days of the date of this order.

March 27, 2026                                        /S/

                                        _____
                                        Julie R. Rubin
                                        United States District Judge

19